SWAN J. FLECKTEN and Others v. H. W. LAMBERTON and Others.[1]

July 1, 1897.

Nos. 10,593—(196).

**Appropriation for State Capitol—Constitutional Limit of Indebtedness.**

*Held*, sections 2, 5, 6, 7 and 8 of article 9 of the constitution do not prohibit the legislature from appropriating the surplus revenues in the state treasury, or a part of the revenues collected each year, for the erection of a state capitol, so long as sufficient public funds applicable thereto are left to defray the current, ordinary expenses of the state government; and it

[1] Reported in 72 N. W. 65.

does not appear that chapter 2, Laws 1893, contravenes these sections of the constitution.

### Same—Appropriation beyond Life of Legislature.

*Held*, the legislature may, for the purpose of erecting a state capitol, make appropriations covering a period of time beyond the two years for which it is elected.

### Legislative Power—Capitol Commission.

*Held*, the legislature may create a board of public officers for the purpose of purchasing a site for, and superintending the erection of, a state capitol thereon, and expending the moneys appropriated for that purpose.

### Seat of Government.

*Held*, St. Paul is the permanent seat of government of this state. until such seat of government is removed in the manner provided by section 1 of article 15 of the constitution.

### Congressional Land Grant for Public Buildings.

By section 5 of the act of congress (11 Stat. 166) authorizing the people of Minnesota territory to form a constitution and state government, ten sections of land were granted to the state for the purpose of erecting public buildings at the seat of government. *Held*, the legislature may erect a new capitol building without first disposing of these lands, and exhausting the proceeds thereof in erecting the same.

### Title of Law—More than One Subject.

*Held*, said chapter 2, Laws 1893, is not unconstitutional as embracing more than one subject.

Appeal by plaintiffs from an order of the district court for Ramsey county, Williston, J., sustaining the demurrer of defendants to the complaint on the grounds that it does not state a cause of action, and that plaintiffs have not legal capacity to sue.   Affirmed.

*John F. Kelly*, for appellants.

*H. W. Childs* and *George B. Edgerton*, for respondents.

CANTY, J.

This action was brought by the plaintiffs, taxpayers and residents of this state, against the state board of capital commissioners, and the members thereof, to enjoin them from erecting the new capitol provided for by chapter 2, Laws 1893, on the ground that said board is misappropriating public funds in erecting the same, contrary to the provisions of the constitution.   From an order sustaining a demurrer to the complaint, plaintiffs appeal.

Said chapter 2 provides for the appointment of a board, which shall select a site in St. Paul for the erection of a new capitol building, purchase the same, and erect thereon such new capitol building. Section 7 provides:

"There shall be transferred in each of the years 1893 and 1894 from the general fund to the credit of the board of state capitol commissioners the sum of five thousand dollars, and in each succeeding year after the year 1894 until the completion of said capitol building, not exceeding ten years, a sum equal to the proceeds of a levy of two-tenths of a mill upon the assessed valuation of the state, for the purchase of a site, or part thereof, and the erection and completion of a new capitol building, in accordance with the terms and provisions of this act; provided, that the total amount so transferred shall not exceed the sum of two millions of dollars."

Conceding, without deciding, that a taxpayer may maintain an action to restrain the misappropriation of state funds, we will proceed to consider the other questions raised.

1. The position of counsel for appellants seems to be that the constitution prohibits the building of a state capitol with surplus revenues now in the state treasury, or with funds to be raised by taxation during the time the capitol is being built, and applied directly to that purpose, and that it can only be built with the proceeds of bonds issued for that purpose. The expense of building a state capitol is not an ordinary, but an extraordinary, expense, within the meaning of sections 2, 5, 6, 7 and 8 of article 9 of the constitution, and counsel cites these sections as authority for his position. These sections read as follows:

"Sec. 2. The legislature shall provide for an annual tax sufficient to defray the estimated (ordinary) expenses of the state for each year; and whenever it shall happen that such ordinary expenses of the state for any year shall exceed the income of the state for such year, the legislature shall provide for levying a tax for the ensuing year sufficient, with other sources of income, to pay the deficiency of the preceding year, together with the estimated expenses of such ensuing year."

"Sec. 5. For the purpose of defraying extraordinary expenditures, the state may contract public debts, but such debts shall never, in the aggregate, exceed two hundred and fifty thousand dollars; every such debt shall be authorized by law, for some single object, to be distinctly specified therein; and no such law shall take effect until it shall have been passed by the vote of two-thirds of the

members of each branch of the legislature, to be recorded by the yeas and nays on the journals of each house respectively; and every such law shall levy a tax annually sufficient to pay the annual interest of such debt, and also a tax sufficient to pay the principal of such debt within ten years from the final passage of such law, and shall specially appropriate the proceeds of such taxes to the payment of such principal and interest; and such appropriation and taxes shall not be repealed, postponed or diminished until the principal and interest of such debt shall have been wholly paid.   *    *    *

"Sec. 6. All debts authorized by the preceding section shall be contracted by loan on state bonds of amounts not less than five hundred dollars each,.on interest, payable within ten years after the final passage of the law authorizing such debt; and such bonds shall not be sold by the state under par.   *    *    *

"Sec. 7. The state shall never contract any public debt, unless in time of war, to repel invasion or suppress insurrection, except in the cases and in the manner provided in the fifth and sixth sections of this article.

"Sec. 8. The money arising from any loan made, or debt or liability contracted, shall be applied to the object specified in the act authorizing such debt or liability, or to the repayment of such debt or liability, and to no other purpose whatever."

It seems to us that the object of these sections is to compel the legislature to provide sufficient yearly revenue to meet the current, ordinary expenses of the state government, and thereby prevent the accumulation of indebtedness for such expenses, and to prohibit the incurring of indebtedness, even for extraordinary expenses, except to a limited extent, and under restrictions and provisions which will insure prompt and certain repayment. The object is to prevent the legislature from mortgaging the future at all for ordinary expenses, and to prevent it from mortgaging the future for extraordinary expenses, except to a limited extent, and in a restricted manner. There is nothing in these sections which limits the amount of taxes which may be levied, or the amount of funds which may be accumulated in the state treasury, or the amount of extraordinary expenses or disbursements which may be paid out of such funds or out of the revenues as they are collected, provided no indebtedness is incurred which cannot be defrayed by the current revenues. While these provisions of the constitution declare that the annual revenues shall be as great as the annual ordinary expenses, they do not imply that such revenues, though raised by

taxation, may not be greater than such expenses, or great enough to defray in ten years the extraordinary expense of building a state capitol.

2. There is nothing in counsel's position that, because the life of a legislature continues for only two years, therefore it can make no standing appropriations, or appropriations covering a longer period of time than such two years. Section 9 of article 9 is no warrant for any such position.

3. Neither is there anything in his position that, because the law places a limited amount of public funds in the state treasury to the credit of a certain board for a designated public purpose, it violates section 1 of article 3, section 1 of article 5, and section 11 of article 9 of the constitution. The legislature is not obliged to remain in session all the time for the next ten years for the purpose of superintending the erection of a state capitol; neither is it required to impose these onerous duties directly upon the executive; but it may establish a board of public officials for that purpose and to expend the moneys appropriated by law for that purpose. Although the law has set aside this money to the credit of this board, it is still in the custody of the state treasurer, and must remain there until drawn out for the particular purpose for which it was appropriated.

4. Neither is there anything in counsel's position that this law provides for a permanent capitol at the temporary seat of government. Section 1, art. 15, of the constitution does not make St. Paul the temporary, but the permanent, seat of government until removed to Kandiyohi county by the legislature, or to some other place by the legislature, and a vote of the people. Nothing of the kind has been done to remove it.

5. Section 5 of the act of congress authorizing the people of Minnesota territory to form a constitution and state government, provides:

"That ten entire sections of land to be selected by the governor of said state, in legal subdivisions, shall be granted to said state for the purpose of completing the public buildings, or for the erection of others at the seat of government, under the direction of the legislature thereof." 11 Stat. 167.

By section 3 of article 2 of the constitution this act of congress is accepted irrevocably.

Counsel contends that it is unconstitutional to erect a new capitol out of other public funds without first exhausting or applying the lands so granted by congress. The position is untenable, if for no other reason, because the lands were granted for "public buildings," not solely for a state capitol. The legislature can, when it sees fit, apply the proceeds of these lands to some other public building or buildings to be erected at the seat of government.

6. Neither is there anything in counsel's position that the law (chapter 2, Laws 1893) is unconstitutional because embracing more than one subject. The law does not embrace more than one subject.

The order appealed from is affirmed.