THE STATE ex rel. WYATT v. ASHBROOK et al., Appellants.

In Banc, February 20, 1900.

1. **Merchant's License: MINISTERIAL DUTY: MANDAMUS.** The duty of officers of a city charged with authority to issue merchant's licenses, are ministerial. And where all the requirements of the law prescribed for the issuance of a license to do business have been complied with by a merchant, he may by mandamus compel such officers to issue him a license. And in this mandamus proceeding against city officers to compel them to issue a license to a merchant who had complied with all the requirements of the law except those of a recent act, such act is determined to be unconstitutional, but no question was raised by respondent as to relator's right to have the constitutionality of the act tested in a mandamus proceeding.

2. **Police Measure.** A legislative act, to be sustained as a police measure, must in some degree tend to prevent some offense or manifest evil, or have for its aim the preservation of the public health, morals, safety or welfare.

3. ———: NO REGULATION. A law that permits any person to do business who pays a certain sum of money to a municipality or the State, and which provides for no supervision or regulation of his business, is not a police measure. It simply imposes a license fee, although the act may bear the title of "an act to regulate business and trade in cities of 50,000 inhabitants or more."

4. **Anti-Department Store Act:** UNCONSTITUTIONAL: CITY TAX FIXED BY LEGISLATURE. The anti-department store act, approved May 16, 1899 (Laws 1899, p. 72), which gives a license commissioner in cities of 50,000 inhabitants or more power to fix a license at not less than $300 nor more than $500 for each of the classes or groups of goods sold by each merchant employing more than 15 persons, one-third of which is to be paid into the state treasury and two-thirds into the city treasury, is violative of that part of the Constitution which says "the General Assembly shall not impose taxes upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but may by general law vest in the corporate authorities the power to assess and collect taxes for such purposes," since it undertakes to impose a tax directly upon a business occupation for city purposes.

5. ———: ———: GIVING AWAY TAXES. If the tax imposed by said act is a state tax, the legislature had no authority to give or remit two-thirds of it to the city.

6. ———: ———: AMOUNT FIXED BY COMMISSIONER. An undetermined tax is in law no tax. And although said act says "the license fee exacted shall be uniform in each city," it is unconstitutional because it gives the license commissioner power to fix the amount of the license tax anywhere between a minimum and maximum amount.

7. ———: ———: CLASS LEGISLATION: UNIFORMITY OF TAXATION. Said act is further unconstitutional because: 1st, it arbitrarily makes a class of all merchants in a city employing 15 persons, and fixes a license fee on them, and exempts all other merchants in that city; 2nd, it does not provide for uniformity of taxation, because it permits the license commissioners to fix different license fees for their respective cities, so that a merchant in one city may be required to turn into the state treasury a larger amount than that paid by a merchant for a like privilege in another.

8. ———: ———: UNIFORMITY OF TAXATION: UNCERTAINTY. Said act does not guarantee uniformity of taxation, because it divides the merchant's goods into 73 classes and then arranges these classes into 28 groups, and provides that the license commissioner may fix a license fee of between $300 and $500 "for every class or group," thus making it possible for the license commissioner in one city to exact so much money for each group, and in another so much for each class.

State ex rel. .v. Ashbrook.

9. ———: ———: UNCERTAINTY: DURATION OF LICENSE. Said act is also clearly void for uncertainty, because of the absence of proper words therein defining the life and duration of the license by it required of certain merchants.

*Held* by MARSHALL, J., in separate opinion that said act is incomplete and is not a law and does not constitute a rule of conduct, and is therefore void.

10. ———: ———: DUE PROCESS OF LAW. Said act is also unconstitutional as unwarranted class legislation, in that it is violative of the natural rights of the citizen as defined by that part of the Constitution which says "that all persons have a natural right to life, liberty and the enjoyment of the gains of their industry" and "that no person shall be deprived of life, liberty or property without due process of law."

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson*, Judge.

AFFIRMED.

*Culver & Phillip* for appellants..

(1) The first objection made in the lower court was that "a license fee so large as to become an exaction for revenue, is a tax. A license may be imposed: 1, for regulation; 2, for revenue; 3, to give monopolies; 4, for prohibition," and it may be imposed for any one or all of these purposes at the same time. Cooley on Tax., p. 403. "A license is a privilege granted by the state usually on the payment of a valuable consideration, though this is not essential. The thing to be done may be something lawful in itself, and only prohibited for the purpose of a license; that is prohibited in order to compel the taking out of a license." Cooley on Tax., p. 406. "It is perfectly competent for the State to collect an ad valorem tax upon property used in a calling and at the same time impose a license tax on the pursuit, as a condition to the right to carry on the pursuit." Aurora v. McGannon, 138 Mo. 45; St. Joseph v. Ernst, 95 Mo. 367. (2) Another objection strenuously urged, as showing the

unconstitutionality of this act, is that its provisions are limited to merchants employing more than fifteen persons, and therefore lacks uniformity in its application and is class legislation in violation of section 53, article IV of the Constitution of Missouri. It must be admitted that this objection is well taken, provided, the distinction made by the legislature between those merchants employing over fifteen persons and those employing fifteen persons or less is an arbitrary and unnatural one. The elaboration of this point involves the discussion of the questions as to whether or not such legislation as this is wise or unwise, beneficial or detrimental; whether or not a department store is an evil or a blessing to the community where located and the public generally and whether or not the policy of this State, as declared by the Legislature in this respect, has any foundation in reason and justice, or is "legislative will run mad." This court held an ordinance of the city of St. Louis providing for the payment of a license by hotels and boarding houses and defining boarding houses and hotels to be "a house where persons are furnished with either board or lodging or both, and having more than four bedrooms for the use of guests," valid and constitutional, affirming the decision of the St. Louis Court of Appeals. St. Louis v. Bircher, 76 Mo. 431; s. c. 7 Mo. App. 169. (3) The objection made to this act and apparently most relied on is that it is vague, indefinite and uncertain in its provisions and incapable of enforcement because it does not provide what length of time a license issued thereunder shall run. We can only say as to this point that the Legislature apparently intended that when a department store had once taken out the license required by this act, that it should have the right to conduct its store thereunder so long as it continued in business. Like an attorney at law, or a doctor of medicine, the license is issued for an indefinite time and is good until revoked.

State ex rel. v. Ashbrook.

*B. R. Vineyard* for respondent; *F. N. Judson* of counsel.

(1)   Mandamus will lie to compel an officer to discharge a ministerial duty.   State ex rel. v. Smith, 104 Mo. 661; State ex rel. v. Oliver, 116 Mo. 188; State ex rel. v. Chase, 42 Mo. App. 343.   And mandamus will likewise lie where the aggrieved party has a clear legal right with no adequate remedy at law.   State ex rel. v. St. Louis, 145 Mo. 577.   (2)   Mandamus will lie to compel the issuance of a license, where all the requirements of law have been complied with.   State ex rel. v. Meyers, 80 Mo. 601; State ex rel. v. Ruark, 34 Mo. App. 325; Bean v. County Court, 33 Mo. App. 635; State ex rel. v. Baker, 32 Mo. App. 98; St. Louis v. Weitzel, 130 Mo. 620.   (3)   A license fee, beyond that required for the purposes of regulation, and so large as to constitute an exaction mainly for revenue, is a tax.   City v. Boatmans Ins. Co., 47 Mo. 150; City v. Ernst, 95 Mo. 366; City v. Spiegel, 75 Mo. 145; City v. Corrigan, 18 Mo. App. 214; Kansas City v. Grush, 151 Mo. 128; R. S. 1889, sec. 1334.   (4)   The power of taxation in this State must be exercised directly by the Legislature or directly by counties or other municipal corporations, acting under legislative grant through their governing bodies.   The power of taxation is legislative, and can not be delegated to ministerial agencies.   Munday v. Radway, 43 N. J. L. 339; State v. Koster, 38 N. J. L. 308; East St. Louis v. Wehrung, 50 Ill. 29; Kinmundy v. Mahan, 72 Ill. 462; State ex rel. v. Mayor, 72 N. W. Rep. 639; Reelfoot v. Dawson, 36 S. W. Rep. 1041; Board v. Abbott, 34 Pac. Rep. 148; McCabe v. Carpenter, 36 Pac. Rep. 836; Inhabitants v. Allen, 39 Atl. Rep. 716; Bank v. Ridge, 62 Mo. App. 324; City v. Clemmons, 43 Mo. 395; City v. Clemons, 52 Mo. 133; Lammert v. Lidwell, 62 Mo. 188; Mathews v. City, 68 Mo. 119; Darling v. St. Paul, 19 Minn. 389; 13 Am. and Eng. Ency.

of Law (1 Ed.), 531; 25 Am. and Eng. Ency. of Law, 79; Cooley on Tax. (2 Ed.), pp. 61, 62, 65; Cooley Const. Lim. (5 Ed.), 139-148; Walsh v. Denver, 53 Pac. Rep. 458; Ex parte Jones, 43 S. W. Rep. 513. (5) In so far as this imposition is a State tax, it is not uniform throughout the State, it being confined in its operations to the cities of St. Louis, Kansas City and St. Joseph. Nor is it uniform as a State or municipal tax throughout "the territorial limits of the authority levying the tax," in that the tax may be fixed at $500 in St. Joseph, $400 in Kansas City and $300 in St. Louis for each department operated. This lack of uniformity makes the license tax thus imposed unconstitutional. St. Louis v. Spiegel, 75 Mo. 145; St. Louis v. Spiegel, 90 Mo. 587; Ex parte Sing Lee, 96 Cal. 354; Kansas City v. Grush, 151 Mo. 128. (6) The act lacks uniformity in its application, not only in the license fee to be exacted, but in limiting its provisions to retail merchants, and to those retail merchants employing more than fifteen persons, and in excluding manufacturing establishments, warehouses and auction houses from its penalties. It is also clearly a species of class legislation, and violates sec. 53, art. IV of the Constitution of Missouri, inhibiting the passage of "any special law granting to any individual any special right, privilege or immunity." The act in question fixes an arbitrary and unnatural distinction between different kinds of merchants and between merchants of the same class, and is therefore void. State v. Thomas, 138 Mo. 100; State v. Julow, 129 Mo. 163; State v. Walsh, 136 Mo. 405; State v. Loomis, 115 Mo. 307; State ex rel. v. Hermann, 75 Mo. 340; Lippman v. People, 175 Ill. 101; Frorer v. People, 141 Ill. 171; Braceville v. People, 147 Ill. 66; State v. Gardiner, 51 N. E. Rep. 136; Ex parte Jones, 43 S. W. Rep. 513; State v. Conlon, 65 Conn. 478; Hannibal v. M. & K. Tel. Co., 31 Mo. App. 23; In re Sam Kee, 31 Fed.

Rep. 680; Ex part Sing Lee, 96 Cal. 354; Schmalz v. Wooley, 39 Atl. Rep. 539.    (7)    The act in question is violative of section 30 of article II of the Constitution, which provides that "no person shall be deprived of life, liberty or property without due process of law."    People v. Gilson, 109 N. Y. 399; State v. Loomis, 115 Mo. 313; State v. Julow, 129 Mo. 173.    The respondent and all others proposing to operate a department store at retail, employing more than fifteen clerks, must pay the enormous license fees provided in the act, while the wholesale merchant, and the retail merchant employing only fifteen clerks, engaging in the same kind of business, is exempted from its provisions. Thus is the relator deprived of the liberty "to freely buy and sell as others may."    In re Jacobs, 98 N.. Y. 98; People v. Warden, 157 N. Y. 126; Millett v. People, 117 Ill. 294; Eden v. People, 161 Ill. 304; Frorer v. People, 141 Ill. 184; Ex parte Kuback, 85 Cal. 274; State v. Goodwill, 33 W. Va. 179; Godcharles v. Wigeman, 113 Pa. St. 431; Com. v. Perry, 155 Mass. 117.

ROBINSON, J.—This is a proceeding by mandamus, commenced by the relator in the Buchanan Circuit Court, for the purpose of compelling the auditor, treasurer and comptroller of the city of St. Joseph, the defendants herein, to issue to him a merchant's license to conduct a department store in said city.    The defendants had refused to issue the license applied for, unless the relator would first pay into the city treasury two-thirds and into the State treasury one-third of the amount required to be so paid by section 6 of what is known as the anti-department store act, approved May 16, 1899 (Laws 1899, p. 72), in addition to the tax imposed by the general laws of the city for a merchant's license.

In the alternative writ, which follows in detail the allegations of the petition therefor, the laws and ordinances of

the city of St. Joseph, prescribing the various requirements necessary to be followed in order to secure a merchant's license, are set forth. The writ then shows that the relator complied with all these requirements in his application for a license, and it was refused by the defendants on the sole ground, as shown in the writ, that he had not paid into the state and city treasury the license fees required by the act referred to, in addition to the ad valorem tax required of all merchants under the general laws of the city, and which the relator has tendered in connection with his application. The writ further shows that in his application for the license, the relator clearly indicated that he desired the license to conduct a department store within the city for the sale of five different classes or departments of goods as defined by said act. It shows that he intended to sell the goods at retail and through twenty clerks or employees engaged by him for that purpose; that the relator filed his application for the license desired by him with the defendant Ashbrook as city auditor on September 15, 1899, 122 days after the passage and approval of the act in question, ignoring its provisions, tendering the license fee under the general levy made by the city for taxes, and demanding of the defendants and each of them that they perform the acts required by the general laws and ordinances of the city, when a merchant's license is applied for, and which are set forth in the alternative writ of mandamus. The alternative writ also shows that the license was refused by defendants solely on the ground that relator had not complied with the provisions of said act.

For a return to the alternative writ, the defendants filed a demurrer alleging as grounds therefor that the matters and things set forth in the alternative writ are not sufficient in law or equity to entitle the plaintiff to the relief asked for, or to authorize the issuing of a writ of mandamus.

The court below overruled said demurrer, and in its de-

cree specially held the act under consideration to be unconstitutional and void. The defendants declined to plead further, and the court thereupon rendered final decree for the plaintiff, and directed the issuance of a peremptory writ of mandamus, commanding the defendants and each of them to do and perform the acts and things required conditionally by the alternative writ, and which were necessary to be performed in the issuance of the license applied for by the relator.

From this final decree, the defendants have appealed to this court. The only question involved in this controversy is as to whether this act, known as the anti-department store law, a brief synopsis of which is given below, is operative or constitutional.

By section 1 of the act, all goods, wares and merchandise in the cities to which it now applies are divided into seventy-three classes, and these classes are then re-arranged into twenty-eight groups or departments. By section 2 of the act from and after one hundred and twenty days after its passage, it is made unlawful for any person or persons, firm, corporation or association of persons to have on hand for sale, sell or expose for sale at retail, any goods, wares and merchandise of more than one of these several classes or groups, without first having obtained a license therefor, as provided for in the act.

By section 3 it is provided that during the 120 days from the passage of the act, the board of officers of the city charged with the duty of issuing merchant's licenses, and after that a license commissioner for each city to be appointed by the governor, are authorized to issue merchants' licenses. By a proviso in this section, the act is limited in its application to such cities of the state as have or may hereafter have 50,000 inhabitants or more. By section 4, the applicant for license is required to state the class or group under which he proposes to conduct his business, and also

state what additional class or group, or what additional article or articles in any class or group, he desires to keep or sell, and also the street number at which he proposes to conduct his business.

By section 5, the board or license commissioner, charged with the duty of issuing licenses, is empowered to fix the sum to be paid for licenses required by the act, but which sum is not to be fixed at less than $300 nor more than $500 for every class or group or for any particular article of any class or group named in the application, in addition to the principal business to be conducted by the applicant. The license fee thus fixed is to be uniform in each city. Section 6 prohibits the issuance of any license until the applicant shall have paid into the city treasury two-thirds and into the state treasury one-third of the amount required to secure the license. Section 7 provides a punishment by imprisonment in the county jail for a term not exceeding one year, and the payment of a fine of not less than $100 nor more than $500, for the violation of any provision of the act, and makes each day's violation a new offense. Section 8 provides that the act "shall not apply to manufacturing establishments, warehouses or auction houses or to any establishment where not more than fifteen persons are employed."

No question is made here by respondent as to the right of relator to compel by mandamus the issuance to him of the license applied for if the act known as the anti-department store bill is unconstitutional or inoperative as declared by the circuit court in its disposition of the case. The duty of respondents being clearly ministerial, where all the requirements of the law preliminary to acquiring a license have been complied with by relator, its issuance if refused was properly compellable by mandamus. And it might further be added that no question ought to be raised as to the character of the imposition levied by the act, notwithstanding it is called a "license fee," and the act imposing it is designated, "an act

State ex rel. v. Ashbrook.

to regulate business and trade in cities having a population of 50,000 inhabitants or over, etc." Courts look beyond the mere title of an act to see and determine its real object, purpose and result, and where the power of taxation therein provided for is exercised for the mere purpose of revenue or undue restraint or prohibition, as is most manifest in the act in question, its designation as "license fee" will not save it from the constitutional restrictions that would apply to it as the imposition of a tax. In no sense can this most extraordinary act be regarded as a police measure, and consequently does not fall within the protection of the police power. It nowhere attempts to protect any public interest or defend against any public wrong. It shows upon its face that regulation is not its purpose, but that revenue, or undue restriction, in the interest of others not embraced in the class designated, is the aim in view. While a most onerous license fee by name is imposed, no police inspection, supervision or regulation is provided, nor is any standard set for the applicant to establish, or that he agrees to attain or maintain, but any and all persons engaged in the business designated in the act, without qualification or hindrance, may come, and a license on payment of the stipulated sum to the commissioner named in the act, will issue, to do business, subject to no prescribed rule of conduct and under no guardian eye, but according to the unrestrained judgment or fancy of the applicant and licensee. The applicant is simply required to pay his money and take out his license. That is the beginning and the ending of the police supervision and control over him or his business so far as concerns the act in question.

In order to sustain legislation of the character of the act in question, as a police measure, the courts must be able to see that its object to some degree tends towards the prevention of some offense or manifest evil, or has for its aim the preservation of the public health, morals, safety or welfare.

If no such object is discernible, but the mere guise and masquerade of public control, under the name "of an act to regulate business and trade," etc., is adopted, that the liberty and property rights of the citizens may be invaded, the court will strike down the act as unwarranted. Mere legislative assumption of the right to direct and indicate the channel and course into which the private energies of the citizen shall flow, or the attempt to abridge or hamper his right to pursue any lawful calling or avocation which he may choose without unreasonable regulation or molestation, have ever been condemned in all free government.

No suggestion is made by counsel in their effort to sustain this act, and to our mind none can be conjectured, why the selling of any or all of the articles of merchandise embraced in two or more of the classes or groups designated therein, in one store or building, under one head or unit of management, when fifteen or more persons are employed, is a thing of danger to the public, or that the morals, health, safety or comfort of the community will to any extent be injured or prejudiced thereby, in any manner different or greater than would result if the same articles were sold in different store buildings run by the same person, corporation or company as independent establishments and each employing fifteen or more persons, or when all of the enumerated articles are sold in one store, wherein less than fifteen persons are employed. If the selling of the different articles enumerated in any one of the classes or groups designated by the act is innocent and harmless when pursued separately as a business, how does it become harmful and dangerous merely because the articles in two or more classes or groups designated in the act, become united for sale under one unit of management and conducted in one building where fifteen or more persons are employed that would call for special legislation with increased and onerous license fees or tax burdens imposed. Such grouping together for sale or dis-

position of those articles of daily use and necessity do not endanger or threaten the peace and good order of society. They neither engender disease, spread contagion, corrupt the morals or encourage dissipation or vice in any form because of such combination, and no sanction for such reasons can be found for the act, as a public measure.

As said above, the act though entitled "an act to regulate business and trade in cities having a population of fifty thousand inhabitants and over" is clearly an exercise of the power of taxation and must be enforced, if at all, under and according to the constitutional limitations and restrictions on the subject of taxation. Conceding that the Legislature is not limited to any form of taxation, and that it may impose a license tax as well as a direct tax upon the department store merchant; and further treating the imposition provided in the act in question as a tax imposed direct by the legislature, and not a delegation of power to the commissioner therein named, to fix an uncertain and varying sum between $300 and $500 as his fancy may suggest (which the relator in this case most strenuously contends is done), then the tax to be paid under the act in question, is violative of the provision of section 10 of article X of our Constitution, which declares that "the General Assembly shall not impose taxes upon counties, cities, towns, or other municipal corporations or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but may, by general laws, vest in the corporate authorities the power to assess and collect taxes for such purposes." By section one of the same article it is further provided that "the taxing power may be exercised by the General Assembly for state purposes, and by counties and other municipal corporations, under authority granted to them by the General Assembly, for county and other corporate purposes."

Section six of the act in question, provides that, "No such license shall be issued until the person, firm, corpora-

tion or association of persons applying therefor shall pay to the city treasurer of the city two-thirds and into the state treasury one-third of the amount fixed by the board or officer receiving such application, as due and payable therefor." While the legislature might authorize the municipality to be affected by the act in question, as it has done in the city charters and in the general laws regulating the incorporation of cities, to license and tax certain corporations and callings, and to impose taxes on all the property within its limits for municipal purposes, it can not itself, or through the agency of the commissioners to be appointed under the act, any more impose such tax directly upon such occupation or business in cities for city purposes, than it can directly impose taxes upon city property for city purposes. As will be seen by section six of the act in question two-thirds of the license fee or tax imposed thereunder upon the department store merchant, is to be paid to the treasurer of the city wherein such store is located, and goes into the city treasury for city purposes, while the remaining one-third of the tax named is to be paid into the state treasury for the use of the State, whereas section 10 of article X of the Constitution above quoted, expressly inhibits the General Assembly from imposing taxes upon cities or other municipal corporations, or upon the inhabitants or property thereof for city or other municipal purposes, and directs that by general laws it may vest in the corporate authorities thereof power to so assess and collect all taxes for corporate purposes. Section 1 of said article X of the Constitution is likewise mandatory in directing how the taxing power may be exercised by the General Assembly and by the cities and municipal corporations of our State, and excludes the assertion of authority attempted by the act in question. And again it might be suggested, that as part of the imposition provided for in section six of the act in question is a city tax, the State not only was wanting in authority to impose it upon the city or the in-

habitants or property thereof, but to appropriate any part to itself, and if the imposition be treated as a state tax the Legislature had no right to give or remit any part of the state's revenue to the city.

But, aside from the question as to whether the tax to be imposed be considered as a municipal or state tax, that should have been imposed by the Legislature of the state or by the cities of the state, relators insist that the act is vitally defective in that it delegates to the commissioner named in the act to be appointed by the Governor, the power to fix the amount of the license fee or tax, and for that reason violates section 1 of article X of the Constitution.

By section 5 of this act it is provided that "the said board or officer in any such city charged with the duty of issuing merchant's licenses shall have power to fix the sum to be paid for licenses required by this act, but such license fee shall not be fixed at less than three nor more than five hundred dollars for every class or group, or for any particular article of any class or group mentioned in the application for such license," etc. While a minimum below which and a maximum above which the commissioner can not go, has been designated in the act, the authority to name and fix the amount of the imposition between these designated sums, is plainly delegated to the commissioner, and can be exercised according to his arbitrary discretion in the premises, subject only to the qualification as further set out in the section, "that the license fee exacted *shall be uniform in each city, in which it is collected.*" Until the commissioner acts and determines upon the rate of the imposition to be levied within the limits of the city for which he is appointed, no one of that community can determine from the law itself what the license fee or tax is or will be; until he acts the rate of the tax is an unknown quantity. In fact, until he acts there is no tax provided. An undetermined tax, is in law no tax. The determination of the amount or rate of a

tax to be imposed, is as essential in exercise of the taxing power as the designation of the property to be taxed or the time for its collection or enforcement.

And here, again, on account of the delegated authority to the commissioner, to be named under the act, to fix the sum to be paid for the license therein required, the further objection is urged to it, that it is violative of the uniformity clause of our state Constitution, which by section 3 of article X, provides that all taxes to be levied and collected for public purposes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general law." Ignorng for the present the question that the merchant doing business in the cities of our state having a population of 50,000 inhabitants or more, in one store or building when 15 or more persons are employed, have been arbitrarily singled out by this act as a class to themselves, that additional burdens might be imposed upon them, from which all other merchants of the state are exempted, all of the class of merchants thus arbitrarily named, under this act, are not subject to the same uniform rate of tax. Even as to them the tax may vary according to the whim and fancy of the different commissioners to be named by the Governor for the different cities, as will be seen from a reading of the act.

The merchant in St. Joseph, for selling the articles enumerated in each of the classes or groups designated in the act (more than one), may be required to pay three hundred dollars, while for selling the same articles in Kansas City his brother department store merchant may be required to pay four hundred dollars, and the merchant of St. Louis be required to pay five hundred dollars, and all under the same act, and where a part of the tax to be collected from each goes to the same common public purpose. So the practical operation of the act in question not only

makes an arbitrary class of merchants in cities of fifty thousand inhabitants or more, doing a retail business under one unit of management where fifteen or more persons are employed, as contradistinguished from all other merchants of such cities, and all other merchants of the state outside of cities of fifty thousand inhabitants or more, whether conducting business under the same condition as those designated in the class defined by the act or otherwise, but all merchants of that class are not necessarily subject to the same uniform rate of taxation, since the rate between three and five hundred dollars, is to be fixed and determined according to the discretion of the different commissioners to be appointed for the various cities, coming within the influence of the act.

But the inequality and want of uniformity in the matter of the application of the act, to the merchant of the designated class, is made more striking when it is suggested that under it the commissioner (say for the city of St. Joseph) may determine that he will require a license fee for selling the articles classified and enumerated under each one of the 28 groups of articles designated in the act to be kept and sold by the merchant of that city (less the articles named in any one group, which he may sell without the requirement of a license) and then the highest license fee that would be required in that city for selling all articles of merchandise enumerated in the act, would be 300 times 27, or $8,100. While in St. Louis, perhaps, the commissioner appointed to look after the interest of that city, being a man of more comprehensive views and of a disposition to give to the act a more liberal and far-reaching interpretation, to meet the financial pressing needs of that city, and being a man of bolder financial reach, might determine that a license fee for each of the 73 classes of articles enumerated in the act was required, and would further fix $500 as the amount of the license fee to be imposed for the selling of articles of each class, over and above the articles of one class that can be

sold without a license. Then we would have the merchant of that city, for conducting the same business as the St. Joseph merchant, paying for his license 72 times five hundred, or the enormous sum of $36,000, thus making the possible astounding difference of $27,900 between the amounts to be paid by merchants arbitrarily created by this act, for the mere purpose that they might be legislated against.

Thus it is seen that the uniformity clause of the Constitution has been violated in this act, not only by the arbitrary and unreasonable classification of merchants of a natural class, for the particular purpose of this particular imposition, and also on account of the discretion given to the commissioner to be named under the act, to fix, in different cities, different license fees or rates of taxation upon the merchants of the same designated class; but the very uncertainty in the language of the act has introduced another element of possible and probable inequality. and want of uniformity in the matter of determining the amount of the tax to be fixed and imposed.

In the exercise of the taxing power, which is the very essence of sovereignty, and of the gravest consequences to the citizen, there ought to be no ambiguity or uncertainty in the language of the law. An act which attempts to levy such burdensome taxation as that provided in the act in question, should at last be plain and past all misunderstanding as to the basis on which the computation is to be made, and yet from a reading of the act no one can tell whether for the selling or exposing for sale, by a merchant of the designated class, all the different articles of goods, wares and merchandise enumerated therein, a license fee, or tax is to be exacted, for selling or exposing to sale the articles named in each of the seventy-three classes, or only the twenty-eight groups of articles.

Section 5 of the act provides that a license fee shall be

fixed at not less than 300 nor more than $500 "for every class or group, or for any particular article of any class or group mentioned in the application for such license." . The words class and group are used together throughout the act as "class or group," and nothing is to be found therein to indicate which is to be considered or what is to be rejected or ignored, in the matter of computing the amount of license fee to be collected, by the commissioner called upon to execute the act. As to whether a license fee is intended to be exacted for selling the articles of each of the 73 classes or for only each of the 28 groups of articles, is a matter of pure guesswork; a thing of blind conjecture, a foundation too uncertain and untenable upon which to rest the cumbrous tax imposition provided in the act.

But the uncertainty as to the meaning of the act is not only made to appear from the use of irreconcilable words and language found therein, but also on account of the absence of proper words therein defining the life and duration of the license to be issued by the terms of the act. Whether the license provided for in the act is to issue and run for a day, month or a year, or for life of the applicant, or for the duration of his business at a fixed place, nothing is to be found in the act to inform one, and again we are driven to the field of conjecture and speculation, without data upon which to predicate a construction as to what is meant. We know of no rule of construction that would justify this court giving to this act a definite meaning not somewhere disclosed or indicated within its four corners. The act is clearly void for uncertainty.

But independent of all these objections to the form and structure of the act; to the mode, manner and amount of the attempted imposition, or as to whether the imposition be treated as a tax or a license; the act is further assailed upon the broad constitutional ground, that as unwarranted class legislation it is violative of the natural rights of the citizen

defined in section 4 of article II of our Constitution (Bill of Rights) which declares "that all persons have a natural right to life, liberty and the enjoyment of the gains of their industry;" and of section 30 of the same article, which declares "that no person shall be deprived of life, liberty or property without due process of law."

The protection of liberty and of property, defined in section 4 of the Constitution, *supra;* "as the gains of one's industry," are among the principal objects for which free government among men has been established, and it is further declared in the closing paragraph of said section, "that when government does not confer this security it fails of its chief design;" and of these rights no person shall be deprived without "due process of law," which means, as declared by this, as by all courts of the land, to be "the law of the land," and these words when having reference to legislative enactments, must mean a requirement of action or abstinence, binding upon and affecting alike each and every member of the community of the same class or of similar circumstances, enacted for the general public good or welfare.    Does the act in question, by the imposition of the license fee provided for therein, infringe upon the liberty of the citizen whom it is to effect, or of his right to the enjoyment of the gains of his industry, or its equivalent, his property?

If the terms life, liberty and property, as used in the Constitution, are "representative terms and cover every right to which a member of the body politic is entitled under the law," as said by SHERWOOD, J., in State v. Julow, 129 Mo. loc. cit. 172, and that within this comprehensive scope are embraced the right to buy and sell as others may; and to pursue such honest calling, vocation or business, as the citizen may choose, subject only to such restraints or the imposition of such burdens as may be required or imposed for the general good, and if "due process of law," is to be defined as "the law of the land," designed to protect and

preserve the rights of the citizen against arbitrary legislation as well as against arbitrary executive or judicial action, then "due process of law" is denied, when any particular person of a class or of the community are singled out for the imposition of restraints or burdens not imposed upon and to be borne by all of the class, or of the community at large, unless the imposition or restraint be based upon existing distinctions that differentiate the particular individuals of the class to be effected, from the body of the community, and this question as to whether the persons thus designated constitute a natural or a reasonable class depends upon facts which the court passing upon the validity or invalidity of the legislation must determine upon.    While the Legislature under its vested authority and power may arbitrarily impose taxes, restraints and burdens of various kinds, within the constitutional limitations prescribed, that may become most onerous and oppressive to the citizen, which the courts can do naught but uphold, it can not create conditions or fiat classes, that will operate to make legislation alone applicable to those artificial conditions and classes, as general law within the meaning of the constitution; or that will entitle it to the designation of "the law of the land," or that will make the act "due process of law" by which alone the liberty of the citizens may be restrained, or his property burdened or disposed of.    As said above, no reason has been given or suggested, and to our minds none can be conceived, why the arbitrary selection of persons and corporations having or exposing for sale (in the same store or building under a unit of management or superintendency, at retail, in the cities of the State having a population of fifty thousand inhabitants, any articles of goods, wares or merchandise, set out and named in section one of the act in question, of more than one of the several classifications or groups therein designated, when fifteen or more persons are employed), was named or made, for the imposition of the license fee provided

in the act, from which all other persons and merchants of the State are exempted. It is classified wholly without reason or necessity. It is so arbitrary and unreasonable as to defy suggestion to the contrary. The simple statement of its creation, is a most fatal blow to its continued existence. It is truly "classification run wild." It is special legislation unrestrained. To have made the act apply to all merchants of a given avoirdupois or to those employing clerks of a designated stature, or to those doing business in buildings of a special architectural design, would have been as natural and as reasonable a classification for the purpose in view, as the classification made by this act.

It follows from what has been said, that the judgment of the circuit court directing the issuance of the peremptory writ of mandamus should be affirmed, and it is so ordered. *Gantt, C. J., Brace* and *Valliant, JJ.,* concur; *Burgess, J.,* concurs in the result; *Marshall, J.,* specially. *Sherwood, J.,* not being present at the hearing, takes no part in the decision.

### SEPARATE OPINION.

MARSHALL, J.—I agree to the affirmance of the judgment of the trial court, upon the grounds, first, that the act considered is clearly class legislation and therefore unconstitutional, and, second, that the act is incomplete and is not a law and does not constitute a rule of conduct, and is therefore void. I do not agree that what is commonly termed an occupation tax, which properly expressed means a license or permission to do business, is in any proper sense a tax. Such license fees have always been held constitutional in Missouri and elsewhere provided they apply equally to all persons similarly situated.