THE STATE OF NORTH DAKOTA, EX REL. GEORGE RUSK, V. WILLIAM BUDGE, D. J. LAXDAL AND ANDREW SANDAGER, AS MEMBERS OF THE BOARD OF STATE CAPITOL COMMISSIONERS.

Opinion filed November 1, 1905.

**Grant of Public Lands to the State — Purposes — Governor's Residence.**

1. The erection of a residence for the governor at the capital is within the purposes of the grant of land made by congress to the state for public buildings at the capital, under section 17 of the enabling act (25 Stat. 681, c. 180).

**Same — Disposition by Legislature Within Constitutional Limits Final.**

2. The disposition of such lands is exclusively with the legislature, and its action in such matters is final, unless violative of some constitutional provision and clearly contrary to the terms of the grant.

**Same.**

3. It is the province of the legislature alone to determine the manner in which said lands may be disposed of in furtherance of the purposes of said grant.

**Constitutional Law — Delegation of Legislative Power.**

4. All legislative power in this state is vested in the senate and house of representatives, and the legislature cannot delegate such power in relation to purely legislative matters.

**Same.**

5. The power to determine the manner of the use of the land granted by section 17 of the enabling act (25 Stat. 681, c. 180) is purely legislative, and cannot be delegated to a commission.

**Same.**

6. The power to limit the sum that shall be used for each public building authorized by section 17 of the enabling act (25 Stat. 681, c. 180) is purely legislative, and cannot be delegated to a commission.

**Same — Capitol Commission — Unwarranted Delegation of Legislative Power.**

7. Chapter 166, page 297, Laws 1905, provided for the appointment of a capitol commission by the governor. Said commission was thereby given authority to remodel and reconstruct the capitol building of the state, and to erect a governor's residence at the capital out of the proceeds of the lands donated to the state by congress. The law did not specify what sum should be used for the capitol building, nor what sum should be used for the governor's residence, nor specify when the buildings shall be completed. *Held,* that the law is invalid, as an unwarranted delegation of purely legislative powers.

Application by the State, on the relation of George Rusk, for a writ of injunction against William Budge and others, as members of the board of state capitol commissioners.

Writ granted.

*George A. Bangs, John A. Sorley* and *Spaulding & Stambaugh,* for relator.

Certificates of indebtedness, whether in shape of bonds or otherwise, issued by any unincorporated board of officials is indebtedness of the state. State ex rel. vs. McMillan, 12 N. D. 280, 96 N. W. 310; Sackett v. City of New Albany, 45 Am. Rep. 467; Beard v. City of Hopkinsville, 23 L. R. A. 402; Grant v. Davenport, 36 Iowa, 396; Council Bluffs v. Stewart ,51 Iowa, 395; Litchfield v. Ballou, 114 U. S. 190, 29 L. Ed. 132; Baltimore v. Gill, 31 Md. 375; State v. Fayette Co., Com'rs, 27 Ohio St. 526; Grant v Co. Com'rs, 21 Fed. 45; Scott v. Davenport, 34 Iowa, 208; Prince v. City of Quincy, 105 Ill. 138; Re Appropriations, 13 Col. 323; City of Joliet v. Alexander, 62 N. E. 861.

The law is an insufficient appropriation bill, in that it specifies no amount for the information of legislators voting for it, or of the people whose property is disposed of, or of the auditor to enable him to comply with section 98, Rev. Codes, but the act itself indicates the necessity for further appropriation. People v. Spruance, 9 Pac. 628; Institute for Education of Mute, etc., v. Henderson, 31 Pac. 714; Ingram v. Colgan, 38 Pac. 315, 366, 39 Pac. 437, 106 Cal. 113, 46 Am. St. Rep, 22, 28 L. R. A. 187; Kingsberry v. Anderson, 51 Pac. 744; Shattuck v. Kincaid, 49 Pac. 758; Goodkuntz v. Acker, 35 Pac. 911; Baggett v. Dunn, 10 Pac. 125; Clayton v. Berry, 27 Ark. 129, State v. Grave, 41 Pac. 1075, 62 Am. St. Rep. 764; Stratton v. Green, 45 Cal. 149; Martin v. Francis, 13 Kan. 220; State v. Wallichs, 11 N. W. 860; State v. Wallichs, 21 N. W. 397.

If the bill is an appropriation bill, it embraces more than one subject, viz.: An appropriation for the construction of the capitol, the governor's mansion, and payment of interest on the indebtedness authorized, and it violates sections 187, 62 and 80, Const. North Dakota. People v. Board, 52 N. Y. 556; People v. Denahy, 20 Mich. 349; Grand Rapids v. Burlingame, 53 N. W. 620; Murray v. Colgan, 29 Pac. 871; Sullivan v. Gage, 79 Pac. 537; H. B. 168, 39 Pac. 1096.

Chapter 166, Laws of 1905, is void as a delegation of legislative power. It commits to the capitol commission to assign the amounts to the three different objects, viz: Construction of the capitol, governor's mansion and payment of interest on the indebtedness authorized, a duty belonging to the legislature under the constitution. The bill should be complete when it leaves the legislature, with items so distinct as to enable the governor to approve or disapprove each, with nothing left to the judgment of the appointee or delegate of the law making body. Dowling et al. v. Lancashire Ins. Co., 65 N. W. 738, 31 L. R. A. 112; State v. Burdge, 70 N. W. 347; O'Neil v. American Fire Ins. Co., 166 Pa. 72, 30 Atl. 943, 26 L. R. A. 715; Anderson v. Manchester Fire Ass. Co., 60 N. W. 1095, 63 N. W. 241, 28 L. R. A. 609; Slinger v. Henneman, 28 Wis. 504; In re Village of No. Milwaukee, 67 N. W. 1033, 33 L. R. A. 638; Ex parte Cox, 63 Cal. 21; Cooley Const. Lim. 137; Galesburg v. Hawkinson, 75 Ill. 152; People v. Bennett, 29 Mich. 451; State v. Simons, 21 N. W. 750.

*C. N. Frich,* Attorney General, and *Tracy R. Bangs,* for respondent.

Payment of interest upon the certificates provided for in chapter 166, Laws of 1905, does not involve a diversion of funds. Board v. McMillan, 12 N. D. 309, 96 N. W. 310; sections 186-187 Rev. Codes 1899; In re Canal Certificates, 34 Pac. 274 (275); Strieb v. Cox, 12 N. E. 481 (485).

Such certificates do not create a debt of the state. Subdivision 6 of section 11, chapter 166, Laws 1905; Kelly v. Minneapolis, 65 N. W. 115; Winston v. Spokane, 41 Pac. 888; Hockaday v. Commissioners, 29 Pac. 290; Baker v. Seattle, 27 Pac. 464; Allen v. Grimes, 37 Pac. 662; State v. McGraw, 43 Pac. 176; State v. Cook, 43 Pac. 928; Johnson v. Harrison, 50 N. W. 923; Attorney General v. Weimar, 26 N. W. 773; Ritchie v. People, 40 N. E. 460; Ala. G. S. Ry. Co. v. Reed, 27 So. 20; State v. Sloan, 74 Am. St. Rep 106; Board Co. Com'rs et al. v. State, 13 Pac. 558.

The law contains within itself a complete and effective appropriation, and does not contravene the provisions of the constitution as to manner of appropriation or unity of subject. Ristine v. State, 20 Ind. 328 (329); Henderson v. Co. Com'rs. 28 N. E. 129; Carr v. State, 22 Am. St. Rep. 628; Campbell v. Com'rs, 18 N. E. 33; State v. LaGrave, 23 Nev. 25, 62 Am. St. Rep. 764; State ex rel. Brainerd v. Grimes, 34 Pac. 833; Ritchie v. People, 40 N. E. 460;

Richman et al. v. Muscatine Co., 4 L. R. A. 452; People v. Dunn, 3 Am. St. Rep. 121; McCauley v. Brooks, 16 Cal. 29; State v. McGraw, supra; State v. Cook, supra.

Chapter 166, Laws of 1905, complies with the enabling act, the constitution of the state, and properly provides for carrying out the provisions of the grant. Allen v. Grimes, supra, State v. McGraw, supra; State v. Cook, supra; Kingman et al. v. Met. Sewerage Com'rs, 27 N. E. 778; Territory v. Scott et al., 3 N. D. 357, 20 N. W. 401; Comonwealth v. Kitching, 5 Gray, 486; In re De Vancene, 31 How. Prac. 343; People v. Hazelwood, 6 N. E. 480; Mills v. Sargent, 36 Cal. 379; Martin v. Tyler, 4 N. D. 278, 60 N. W. 392.

MORGAN, C. J. The relator seeks a permanent injunction restraining the defendants from further proceeding towards the remodeling and reconstruction of the capitol building of the state of North Dakota, and from all other proceedings by said board provided for by chapter 166, p. 297, Laws 1905. Said chapter provides for the appointment by the governor of a board of capitol commissioners, consisting of three persons. It provides that such board shall have power to make a contract for the remodeling and reconstruction of the capitol of the state of North Dakota, and for the erection of a governor's residence on lots owned by the state in Bismarck. The details as to how funds shall be procured by issuing and selling certificates of indebtedness to be drawn solely against the funds derived from the sale of public lands granted by congress to the state under section 12 and 17 of the enabling act (25 Stat. 680, 681, c. 180), are provided for by the act. The members of the board were duly appointed by the governor and confirmed by the senate. The members thereof duly qualified under their appointment by taking the oath and giving the bonds required by the act, and duly organized as a board by the election of a president and the appointment of a secretary. Afterwards the board advertised for plans and specifications for remodeling and reconstructing the capitol building, and for bids for doing the work and furnishing the materials under the plans and specifications furnished. While such advertisement was proceeding, a preliminary injunction was issued by this court upon a complaint verified by the relator. An order to show cause was incorporated in said preliminary injunction why the same should not be continued in force permanently. The defendants appeared, and, issues having been

joined on the allegations of the complaint, the same were argued
before the court on October 23d; the hearing of the order to show
cause having been set on that day.

The plaintiff alleges in the complaint that chapter 166, p. 297,
Laws 1905, under which the defendants are proceeding, is uncon-
stitutional and void, and that the defendant board is proceeding in
direct violation of said chapter, which specifies what their duties
shall be and how they shall proceed. In general, the complaint
alleges that the board is proceeding to carry out the provisions of
said act before it is practicable, and is therefore contrary to the
terms of the act, and that the board has violated section 6 (page
299) of said act, which prescribes their duties as to selecting plans
and specifications and receiving bids. The claim is made in sup-
port of this objection that competitive bids are not asked for,
either as to plans or as to doing the work. It is also claimed that
the board is contracting a debt against the state which is in ex-
cess of the limitation on debts fixed by the constitution. It is also
contended and alleged in the complaint that the board is proceed-
ing to dispose of the lands donated by congress by the enabling
act in a manner contrary to the provisions thereof, and that the
board is diverting the fund derived from the sale of said lands by
providing for the payment of interest on certificates of indebted-
ness out of said funds. It is also alleged that the said act is uncon-
stitutional because (1) it contains more than one subject, viz., the
reconstruction of a capitol building and the erection of a gov-
ernor's residence. (2) That it delegates to the board the power
of determining what sum shall be expended in a governor's resi-
dence, and what sum shall be expended in reconstructing the capi-
tol building. (3) That the law contravenes the provisions of
the enabling act by making provisions for the erection of a
governor's residence. No objection is urged that this court is
without jurisdiction to entertain the action as an original one.

Whether a residence for the governor of the state at the capital
is a public building, within the terms of the enabling act, or not,
is a matter of argument between opposing counsel in the case.
Section 12 of the enabling act grants fifty sections of land to the
state "for the purpose of erecting public buildings at the capital
* * * for legislative, executive and judicial purposes." Sec-
tion 17 of said act grants to the state 50,000 acres of land "for
public buildings at the capital of said state." There is no other
provision in the enabling act relating to or prescribing what build-

ings are to be deemed public buildings within the purpose of this act. The legislature is vested with the power to dispose of said land, and the duty of using the proceeds subject to the terms of said act. The legislature has enacted that an executive mansion shall be erected out of the proceeds of said land, and thereby declared an executive mansion to be a public building, within the meaning of said act. We deem that a correct and reasonable construction of the enabling act. The custom is general to provide the governor with a home at the capital. Generally this is owned by the state. The possession is in the state. It is used by the state through its executive. The governor is present at the capital of the state to discharge public functions. The occupancy of the executive mansion may be correctly said to be for public purposes, and to be a public building, within the meaning of the enabling act. Section 17 does not grant this land solely for capitol building purposes. Other buildings may be erected out of the proceeds. Fleckten v. Lamberton, 69 Minn. 187, 72 N. W. 65. The grant under section 17 and the grant under section 12 of these public lands may be appropriated and disposed of for a capitol building. Whether the grant under section 12 may be used for a governor's residence we need not determine, as section 17 clearly permits the erection of such a residence out of the lands thereby granted. To what extent the land granted by the two sections of the enabling act may be used for the same purpose or building we need not determine. The legislature having enacted that a governor's residence shall be one of the public buildings contemplated by said section 17, its action is final on that question, if within the purposes and terms of said section.

It is next contended by the relator that said chapter 166 is void, as an unwarranted delegation of legislative powers to said board. The basis of such contention is that matters of legislative discretion are to be determined by the board, which should have been specifically determined by the legislature. It is claimed that the sums to be expended on a residence for the governor involves a matter of legislative discretion, which cannot properly be delegated to the board, but must be limited by the legislature to an amount certain. Under the constitution all legislative power is vested in a senate and house of representatives (section 25), and all constitutional provisions are mandatory, unless expressly declared to be otherwise (section 21). Whether the power to determine the relative amounts of the fund derived from the sale of the lands granted by

congress that shall be spent for a capitol building and for a governor's residence is a matter of legislative discretion or pertains to administrative questions is the question to be determined. It is not disputed by any one that purely legislative functions cannot, generally, be delegated. This is founded on the familiar principle that a delegated power cannot be redelegated unless expressly provided in granting the power. The people having delegated the power to legislate to the legislature, it is incumbent upon it to enforce the will of the people, and not delegate it to others. See Sutherland on Statutory Construction (2d Ed.) vol. 1, section 87, and cases cited. "One of the settled maxims in constitutional law is that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the state has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the constitution itself is changed. The power to whose judgment, wisdom and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust." Cooley's Constitutional Limitations (5th Ed.) p. 139. See, also, Dowling et al. v. Insurance Co., 92 Wis. 63, 65 N. W. 738, 31 L. R. A. 112; O'Neil v. Insurance Co., 166 Pa. 72, 30 Atl. 945; State v. Simons, 32 Minn. 540, 21 N. W. 750; State v. Ashbrook, 154 Mo. 375, 55 S. W. 627, 48 L. R. A. 265, 77 Am. St. Rep. 765.

The exceptions to this general rule are not material to be here considered. If this power be purely legislative, defendants concede that no delegation of the duties is permissible. If purely administrative, the plaintiff concedes that they may be delegated. The line dividing these two powers is not always readily seen, and to determine when the line is crossed is an extremely delicate duty in many instances. Unless the delegation of the power is clearly a violation of the constitutional provision that the legislative power is vested in the legislature, the plaintiff's contention on this point should be upheld. The will of the legislature should not be thwarted, except in a clear case of violating the mandate of the constitution. Cooley's Constitutional Limitations (5th Ed.) c. 7, pp. 192-200; Cincinnati, etc., Ry. Co. v. Clinton County Com'rs, 1 Ohio St. 88. It will not be doubted by any one that the

legislature alone can legally determine when the proceeds of the congressional grant can be expended in public buildings at the capital. The language of section 17 of the enabling act is conclusive upon the question. When that act provides, "and the lands granted by this section shall be held, appropriated and disposed of exclusively for the purposes herein mentioned in such manner as the legislatures of the respective states may severally provide," no room is left for debate on the question that the legislature shall determine when these funds shall be used for public buildings, and what these public buildings shall be. The power to control these lands and the funds derived therefrom was delegated by congress to the legislature, and that delegation was accepted and confirmed in the constitution by its adoption by the people. Hence it is clear that the general disposition of these funds for use in public buildings must be done by the legislature.

It is claimed that the legislature has fully performed this general duty by the provisions of section 1 of chapter 166, wherein it is enacted what the duties of the board of capitol commissioners shall be in the following words: "And whose duty it shall be to remodel and reconstruct upon its present site the capitol building of the state of North Dakota, at Bismarck, and erect a suitable residence for the governor on the lots now owned by the state according to the provisions of this act." The law contains no directions as to how much shall be expended for each of said buildings. That is left entirely to the commissioners. Nor does the law definitely specify when these buildings shall be completed, nor when the duties of the commissioners shall end. It cannot be reasonably disputed that the legislature has power to delegate to a board the work of superintending the erection of public buildings. The legislature cannot act upon every detail arising in the course of the erection of public buildings, or in preparation therefor. This power must necessarily be delegated to some person or body. These duties are deemed executive, although they often involve discretion, and some of these could properly have been specifically provided for by legislative enactment. Duties that relate to acceptance of plans and specifications, making contracts, selecting materials, and other similar ones relate to the execution of the law enacted by the legislature, and are deemed administrative. State v. McGraw, 13 Wash. 311, 43 Pac. 176; Fleckten v. Lamberton, 69 Minn. 187, 72 N. W. 65; Territory v. Scott, 3 Dak. 357, 20 N. W. 401.

These cases sustain the right to delegate to a board or committee the power to erect a capitol building, and such duties are there denominated administrative. In none of these cases was the precise point herein involved presented or decided. The law under which these decisions were made fixed the maximum cost of the building, and one building only was to be erected. Hence the discretion of the board of commissioners was not unlimited, so far as the cost of the building was concerned. In this case the commission has unlimited discretion as to what the residence shall cost, and what the capitol shall cost, within the aggregate cost of both, which may, perhaps, be said to be limited to $600,000, because the aggregate sum of the certificates of indebtedness against the funds with which the buildings are to be paid for is limited to that sum. The commission has absolute power under this law to fix the limits of the cost of each of said buildings. They finally determine what sums shall be used for each building. We think that such discretion should have been exercised by the legislature. It is not properly an administrative discretion. What the several buildings shall cost should have been limited by the act, as it is a substantive matter of legislative discretion that the legislature cannot delegate. Section 17 of the enabling act prescribes that the lands donated by the United States to the state for public buildings shall be disposed of as provided by the enabling act, and shall be disposed of in the manner provided by the legislature. The legislature does not comply with these provisions of the enabling act, when it leaves it, without restriction or direction, to the capitol commission board to dispose of these funds in such manner as it deems wise, subject to one limitation only, that a capitol building shall be remodeled and reconstructed and a governor's residence erected. How much of these funds should be used for each of these buildings pertains to the manner of the disposition thereof. The discretion and judgment to be used in these matters of relative amount are committed to the legislature by congress. They are purely and clearly legislative powers, and cannot properly be delegated to persons or boards.

The principle that purely legislative functions and discretion cannot be delegated is illustrated in many cases in construing the powers and acts of city councils. The legislature may delegate to such bodies the power to make provisions for local government within constitutional limitations. In carrying out these functions city councils are held not to have the power to delegate to others

those matters pertaining to legislation, and requiring for their execution legislative discretion or judgment. Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659; Harrisonburg v. Roller, 97 Va. 582, 34 S. E. 523; Minneapolis Gas Light Co. v. City of Minneapolis, 36 Minn. 159, 30 N. W. 450; Thompson v. Schermerhorn, 6 N. Y. 92, 55 Am. Dec. 385; Birdsall v. Clark, 73 N. Y. 73, 29 Am. Rep. 105. In the last case cited the court said: "It is a well-settled principle that public powers or trusts devolved by law or charter upon the council or governing body, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others. Dillon on Municipal Corp. section 60. If discretion and judgment are to be exercised either as to time or manner, the body or officer intrusted with the duty must exercise it, and cannot delegate it to any other officer or person. * * * The council directed, not in a specific case, but in all cases, that the superintendent of streets should 'cause the work to be done,' thus delegating the precise authority conferred upon it. The charter conferred the power upon the council to cause it to be done by contract or otherwise. This requires the exercise of discretion and judgment as to the manner in which the work should be done. Whose judgment is to be exercised? The legislature has said that it is the judgment of the council, but the latter has attempted to invest the superintendent of streets with its exercise. This they had no power to do. The charter clearly contemplates the action of the council in each case." These cases, as well as those cited as bearing upon the powers of the legislature, unite in the general principle that agents or officers cannot be intrusted with powers of purely governmental or legislative character. They announce a salutary principle of constitutional law, which should not be departed from. The decision on this point is conclusive, and determines the action in favor of plaintiff's contention.

Other objections are urged against the validity of the law, and against the proceedings of the board, but to determine them would serve no purpose at present.

An order will be entered permanently enjoining further proceedings of the defendant board. All concur.