WILSON C. BROWN v. PETER M. RINGDAL and Others.[1]

July 23, 1909.

Nos. 16,269—(215).

**Act Constitutional.**

> *Held,* following Fleckten v. Lamberton, 69 Minn. 187, sustaining the con stitutionality of chapter 2, Laws 1893, providing for the construction of the new state capitol, that chapter 27, Laws 1909, providing for the construction of a new state's prison at Stillwater, is a valid enactment.

**Same — Certificates of Indebtedness Not a State Obligation.**

> The certificates of indebtedness thereby authorized to be issued do not create obligations of the state, independent of the fund appropriated and provided for by the act, and are not, therefore, in violation of section 5 of article 9 of the constitution.

**Same.**

> The certificates are payable out of the fund so appropriated, and are mere evidence of the right of the holder to demand and receive the fund when collected and received by the state treasurer from the tax levy directed to be made by the act.

Action in the district court for Ramsey county by a taxpayer to enjoin defendants as members of the state board of control from issuing certain certificates of indebtedness, upon the ground that such issue would be in violation of article 9 of the state constitution. From an order, Olin B. Lewis, J., sustaining defendants' demurrer to the complaint, plaintiff appealed. Affirmed.

*Stringer & Seymour,* for appellant.

When the state capitol was in process of construction, this court decided the case of Fleckten v. Lamberton, 69 Minn. 187. The court held that the constitution (art. 9, §§ 2, 5, 6, 7, 8) does not prohibit the legislature from appropriating the surplus revenues in the state treasury, or a part of the revenues collected each year, for the erection of a state capitol, so long as sufficient public funds applicable

[1] Reported in 122 N. W. 469.

thereto are left to defray the current ordinary expenses of the state government. But the court used this carefully guarded language: "The object [of these provisions of the constitution] is to prevent the legislature from mortgaging the future at all for ordinary expenses, and to prevent it from mortgaging the future for extraordinary expenses, except to a limited extent, and in a restricted manner." This language fairly means that in the construction of the capitol the state must pay as it goes. After this decision, the capitol commissioners issued certificates of indebtedness upon which over two million dollars are still unpaid. The decision in this case did not authorize or suggest that the state might borrow the money in advance of the tax levy, but these certificates were, nevertheless, issued. It is not an unfair statement to say that they have never found general currency. All but about $45,000 of these certificates, we are told, are held by the state. There has always been a cloud upon the validity of these certificates. It is difficult to understand why these certificates of indebtedness do not constitute a mortgaging of the future which this court distinctly said should not be done. Likewise, the certificates of indebtedness on account of the construction of buildings for the state university are largely held by the state. Is it lawful to issue these certificates? Is there any substantial difference between the issuance of bonds for the state capitol and the issuance of certificates of indebtedness payable from funds raised by general taxation? Of what use is the constitutional provision with respect to the limit of indebtedness, if instead of issuing bonds, certificates may be issued by which the state can borrow money without limitation?

The statute of 1909 goes much further than the law with respect to the construction of the state capitol and erection of buildings for the state university. The law contemplates: (a) Issuance of obligations and sale to the highest bidder. (b) The money is to be actually borrowed by the state. (c) The money is to be used by the state for the erection and equipment of a state prison. (d) The promise to repay the loan is really made in behalf of the state. (e) The money is to be repaid by the state, not out of the earnings of any particular department, but by general taxation. (f) In plain and unequivocal

language, the proposed obligations are denominated "Minnesota Prison Certificates of Indebtedness."

The board, as fast as funds are needed for construction purposes, is authorized to issue and sell certificates of indebtedness. The board of control is not a corporation. It has no power to act save for the state. The building proposed to be erected is not the building of the board of control, but of the state of Minnesota, constructed by the state in discharge of one of the first and most important of the functions of a sovereign state. It cannot, and will not, be contended that those obligations are merely the obligation of the board of control. They are state obligations. They are to be paid by the state; they are to be paid by general taxation. They are not payable out of the earnings of any particular fund or any particular department of the state government. They are properly called certificates of indebtedness. Being properly so denominated, they are the certificates of the state and certainly will constitute a part of the public debt of the state.

A certificate of indebtedness is nothing more than a declaration that the person or corporation making such certification has contracted a debt. In this respect perhaps the law of 1909 is a departure from previous laws. There is nothing in the law which states these certificates are payable out of a specific fund. It is true that the law makes provision for the levying of a tax to meet these obligations, but does that save the certificates of indebtedness? It is a provision common to the issuance of municipal obligations. The provision is inserted quite as much for the benefit of the creditor as the debtor. The particular office of the provision creating the special fund by tax levy is to give assurance to the creditor that the money borrowed from the creditor will be paid. If the tax levy is not made, the creditor still has his claim against the municipality. It makes no difference what the obligation may be called—whether bond or certificate of indebtedness—the instruments alike create a public debt for borrowed money. While the statute of 1909 makes provision with respect to the fund out of which the money borrowed shall be repaid, it does not change the character of the obligation to repay the borrowed

money, which is precisely the same whether these auxiliary provisions in the statute with respect to payment were made or not.

The certificates of indebtedness which the court has under consideration are not payable out of the earnings of a particular department of public service, nor out of special assessments for local improvements, nor out of a particular fund not raised by general taxation, when collected. See Kelly v. City of Minneapolis, 63 Minn. 125.

Fleckten v. Lamberton, 69 Minn. 187, and Kelly v. City of Minneapolis, clearly define the rule announced by this court. It simply means that after the limit of indebtedness is reached, state or municipality cannot issue certificates of indebtedness to be paid by general taxation. See State v. McMillan, 12 N. D. 280; City of Ottumwa v. City Water Supply Co., 119 Fed. 315, 59 L. R. A. 604, and notes; Rodman v. Munson, 13 Barb. 63; Newell v. People, 7 N. Y. 9; Eddy Valve Co. v. Town of Crown Point, 166 Ind. 613.

*George T. Simpson,* Attorney General, *Lyndon A. Smith,* Assistant Attorney General, *George H. Sullivan* and *John Lind,* representing State University, for respondents.

The defendants take the position that the plaintiff is interested in this matter only so far as taxed for the construction of the state prison. The state, as a tax-paying body, is affected by the operation of the law in question only as it is called upon to pay the taxes levied pursuant to that act. The levying of the tax and the appropriating of the revenues derived from the tax are legitimate and wholly within the legal rules approved by this court in the case of Fleckten v. Lamberton. The levying and appropriation of the taxes provided for by Laws 1909, c. 27, are constitutional within the decisions cited, and being constitutional the method of disbursing the funds so obtained is immaterial except as a question of public policy. A debt is not created by the manner in which money is used, but by the manner in which it is obtained. If the legislature had provided that the prison should have been built by the expenditure of $250,000 a year, and one ninth of the prison built during each consecutive single year, the constitution would have been literally complied with in the matter of creating outstanding obligations; and the state would have been a

loser, and the legislature would have been condemned by all sensible people for requiring the prison to be built piecemeal. If the legislature had levied for the purpose of constructing a prison a sum large enough to produce by the use of ordinary discounts $2,250,000 at the present time, and the contract for constructing the prison had been let to a person for the sum levied, to be paid as collected, no legal objection could have been raised. If such a procedure is unobjectionable a procedure accomplishing the same thing more economically and to the greatest convenience to the state ought not to be objectionable. The plan adopted by the legislature accomplished the same thing as did the admittedly unobjectionable plan, and at a less cost to the state and in a more satisfactory manner. Instead of building a fraction of the structure each year, the right to the revenues provided for may better have been transferred at once to the contractor. The assignment of the right to such revenues could be made by the contractor to his banker, but it would be better for the interests of the state that the money be obtained from willing investors. This short cut from the state to the investor simply did away with complications in the expenditure of the money; provided a way in which the prison could be immediately built; and accomplished only that which could constitutionally have been accomplished by a more roundabout and expensive procedure. There are many cases which sustain the position of the defendant. People v. Pacheco, 27 Cal. 176; In re State Warrants, 6 S. D. 518; Harris v. Dubuclet, 30 La. An. 662; Little v. City of Portland, 26 Ore. 235, 246; People v. May, 9 Colo. 404.

It may be argued by the plaintiff that the fact that interest is to be paid upon the proposed certificates of indebtedness makes the obligation recited in such certificates a debt of the state of Minnesota. In two cases, identical in principle with the one under consideration it has been held that interest upon an obligation does not determine its character. State v. Parkinson, 5 Nev. 15, 27; In re State Warrants, supra.

BROWN, J.

Action by a taxpayer to restrain and enjoin the state board of con-

trol from issuing or negotiating certificates of indebtedness as authorized by chapter 27, p. 29, Laws 1909, providing for the construction of a new state's prison at Stillwater. A general demurrer to the complaint was sustained, and plaintiff appealed.

The action challenges the constitutionality of the statute referred to. Section 1 of the act authorizes, empowers, and directs the board of control to complete the construction of a new state's prison, on a site acquired for the purpose under Laws 1905, p. 547, c. 337, § 19, subd. 12, and according to plans and specifications approved by the prison warden and the board of control, and to equip it with all necessary facilities for carrying on therein the industrial work authorized by law, and so as to provide for the profitable employment of convicts confined in the prison, at a cost not exceeding $2,250,000. Section 2, for the purpose of raising the funds thus appropriated, directs the state auditor to levy and collect, in the same manner as other taxes are levied and collected, for the year 1909 and each succeeding year for nine years, a tax sufficient to produce for each of said years the sum of $225,000 on all the taxable property of the state, and credit the same to the board of control as a separate fund, known as the "Prison Building Fund," "and said amounts are hereby appropriated for the purpose aforesaid for each of said years." This section further authorizes and empowers the board of control, if deemed necessary to carry forward the work of construction, to issue and sell, as funds are needed for the purpose, certificates of indebtedness, to be known and classed as "Minnesota Prison Certificates of Indebtedness," bearing interest at a rate not exceeding four per cent. per annum. Section 3 requires the work of construction to be expeditious and that the contract be awarded to the lowest bidder.

The contention of plaintiff is that this act contravenes and violates sections 2, 5, 6, 7, and 8 of article 9 of the state constitution, and is consequently void. So far as material, section 2 provides for an annual tax levy for ordinary expenses of the state and such deficiencies as may from time to time arise. Section 5 provides that for purposes of extraordinary expenditures the state may contract public debts, "but such debts shall never, in the aggregate, exceed two hundred and fifty thousand dollars." Section 6 provides that debts au-

thorized to be contracted by section 5 shall be in the form of state bonds of not less than $500 each, payable within ten years. Section 7 provides that the state shall never contract any public debt, unless in the time of war, to repel invasion or suppress insurrection, except as permitted by sections 5 and 6. Section 8 provides for the expenditure of money arising from an issue of bonds for the purposes only of the act of their authorization.

Counsel for plaintiff, in support of the contention that the act is unconstitutional, presented his case with so much earnestness and ability as to dispel entirely the idea that the suit is a friendly one, brought to bring about a particular result, and to cause the members of the court seriously to reflect before announcing a conclusion adverse to his position on the merits of the question. But, whatever might be the view of the court as now constituted, were the question a new one, a majority of the present members are of opinion that it was settled adversely to plaintiff's contention by the decision in Fleckten v. Lamberton, 69 Minn. 187, 72 N. W. 65, which we follow and apply.

That case involved the constitutionality of chapter 2, p. 6, Laws 1893, providing for the construction of the new state capitol. The act under consideration is conceded by counsel for plaintiff, for all practical purposes, identical with the one there held valid, except that this act provides for the issuance of certificates of indebtedness in anticipation of the collection of the tax thereby directed to be levied, to be negotiated as therein provided, whereas the state capitol act contained no such provision. However, by chapter 96, p. 118, Laws 1897, similar certificates were provided for, and were issued and negotiated by the capitol commission, and are now outstanding. Though this act was not referred to in the Lamberton decision, it was then, and for some time prior thereto had been, in force. It was passed by the legislature on April 3, 1897, and the decision in the Lamberton case was filed July 1, 1897.

Counsel for plaintiff differentiates the Lamberton case by the fact that no certificates of indebtedness were there authorized to be issued, and earnestly insists that this feature of the act under consideration renders it wholly void. We are unable to concur in this claim.

The certificates in and of themselves create no indebtedness against

the state. On the contrary, they are mere evidence of the holder's right to demand and receive from the state treasurer the proceeds of the tax authorized by the act to be levied and collected, and known and classified as the Prison Building Fund. Fairly construed, the act contemplates their payment from this fund exclusively, and they are not general obligations of the state. Whatever indebtedness, if any, was created by this act, is, within the Lamberton case, found in the provisions thereof appropriating $2,250,000 for the construction of the new prison and the levy of a tax extending over a period of nine years to produce the same, and not by the issuance of certificates of indebtedness evidencing the right of the holders thereof to the fund when collected. If the certificates could be construed as creating an indebtedness against the state payable from the general revenue fund, a different question would be presented. But they are not. They are to be issued in anticipation of funds provided for and appropriated, rightfully under the Lamberton case, and are valid only as respects that fund when paid into the state treasury.

We need not stop to consider whether a subsequent legislature could rightfully repeal this act, and thus leave outstanding certificates issued thereunder, and so impair the faith and credit of the state, nor the extent to which the legislature might, if so disposed, go in making appropriations of this kind. No danger from this source is to be apprehended. At any rate, the legislature, when acting within constitutional limits, is answerable to the people, and not to the courts.

Our conclusion, therefore, is that the validity of this act is sustained by the Lamberton case, and we follow and apply it.

Order affirmed.

LEWIS, J. (dissenting).

I dissent.

Section 1, c. 27, p. 29, Laws 1909, authorizes and directs the state board of control to complete the construction of the new state prison at Stillwater at a cost not exceeding $2,250,000.

Section 2 reads: "To provide the funds necessary for what is authorized in section one (1) of this act, the state auditor is hereby authorized and directed to levy and collect, in the same manner as other

state taxes are levied and collected, for the year 1909 and for each and every of the next succeeding nine (9) years, two hundred and twenty-five thousand (\$225,000) dollars, and the interest thereon, and a tax levy sufficient to produce, for each of said years, that amount of money shall be levied on all of the taxable property of this state, and credited to the board of control of state institutions in a separate fund for said purposes to be known as the 'Prison Building Fund,' and said amounts are hereby appropriated for the purposes aforesaid for each of said years, and pending the said levy and collection of the said taxes, the said board of control is hereby authorized and empowered, if said board of control deems it necessary or desirable so to do, to issue and sell, as funds are needed for construction purposes, certificates of indebtedness to be known and classed as Minnesota Prison Certificates of Indebtedness, at not less than par value thereof, earning interest after the issuance and sale thereof, payable annually, at a rate not greater than four (4) per cent. per annum, in such form and upon such terms and conditions as the said board of control may determine, in an aggregate amount not exceeding the amount herein authorized and directed to be raised by taxation; provided, that said certificates shall be issued in denominations of not less than five hundred (\$500) dollars, and provided, that the first right of investment therein is reserved to this state, and provided, that such of said certificates as are not purchased by this state, shall, in such way and manner as said board of control may deem best, be offered to the general public for investment."

Section 3 requires that the completion of the construction of the prison be done as expeditiously as possible, and under contract duly made and entered into with competent and responsible contractors and builders, who are lowest bidders therefor.

In pursuance of this act, during the month of April, 1909, the state board of control advertised for proposals for the purchase of Minnesota state prison certificates of indebtedness to the amount of \$550,000 in denominations of \$500 each, to be dated June 1, 1909, and payable as follows: \$225,000 August 1, 1913; \$225,000 August 1, 1914; and \$110,000 August 1, 1915. At the same time the board made it known that it would receive bids for the purchase of Minne-

sota state prison certificates of indebtedness aggregating $1,575,000, to be issued from time to time in such amounts as might be required for construction purposes, covering a period of not less than three nor more than four years, payable at the rate of $225,000 per annum, exclusive of interest, beginning August 1, 1913. The Capital National Bank of St. Paul having offered par and accrued interest for the $560,000 Minnesota state prison certificates above mentioned, this restraining action was commenced against the board in order to secure the sanction of the court to the validity of the act.

I am decidedly of the opinion that chapter 27, p. 29, Laws 1909, is in conflict with sections 2, 5, 6, 7, and 8 of article 9 of the state constitution. The act authorizes and directs the state auditor to levy and collect annually as other taxes are levied and collected, for nine years commencing with the year 1909, $225,000 and interest thereon. This tax is to be levied upon all the taxable property of the state and credited to the board of control in a separate fund known as the "Prison Building Fund." The majority of the court base their opinion on the decision in Fleckten v. Lamberton, 69 Minn. 187, 72 N. W. 65, and it becomes important to determine exactly what was decided in that case.

The court there had under consideration the constitutionality of chapter 2, p. 6, Laws 1893, the material part of which, page 8, reads:

"There shall be transferred in each of the years 1893 and 1894 from the general fund to the credit of the board of state capitol commissioners the sum of five thousand dollars, and in each succeeding year after the year 1894 until the completion of said capitol building, not exceeding ten years, a sum equal to the proceeds of a levy of two-tenths of a mill upon the assessed valuation of the state, for the purchase of a site, or part thereof, and the erection and completion of a new capitol building, in accordance with the terms and provisions of this act; provided, that the total amount so transferred shall not exceed the sum of two million dollars."

The court held that the appropriations provided by the act were from the surplus revenue in the state treasury and from such surplus as might exist during each of the future years named; that the constitutional provisions did not prevent the application of the surplus to such a purpose so long as such appropriations did not

infringe upon the amount available for the ordinary current affairs of the government. The court held that the legislature might appropriate the prospective surplus in the treasury for a given number of years for the purpose of building a state capitol; but it was not held that the legislature might incumber the future taxable property of the state by a compulsory future levy. Observe the reading of the act of 1893. It transferred from the general fund to the credit of the state capitol commissioners a sum equal to the proceeds of a levy of two-tenths of a mill, provided that amount of surplus be in the general fund. The appropriation was predicated upon the presumption that a surplus sufficient would exist when the time arrived, but made no provision to create the surplus. So considered, there was no present debt incurred, and no mortgaging of the future assets of the state.

Chapter 27, p. 29, Laws 1909, was constructed upon an entirely different principle. It does not appropriate from the general fund such surplus as may be found when the time arrives, but imposes on the state auditor the duty to make a levy upon the taxable property of the state for the specific purpose of creating a fund which shall be set aside to the credit of the state board of control for the erection of the prison. In Fleckten v. Lamberton the court was dealing with no such proposition. The gist of that decision is contained in the syllabus, and is as follows: "The constitution does not prohibit the legislature from appropriating the surplus revenues in the state treasury, or a part of the revenues collected each year, for the erection of a state capitol, so long as sufficient public funds applicable thereto are left to defray the current ordinary expenses of the state government. * * * "

Referring in the opinion to the constitutional provisions, the court (page 190) says: "The object is to prevent the legislature from mortgaging the future at all for ordinary expenses, and to prevent it from mortgaging the future for extraordinary expenses, except to a limited extent, and in a restricted manner." The constitutionality of the act of 1893 was attacked by the plaintiff in that case on the ground that the building of a new state capitol was in all respects an extraordinary expenditure and could only be provided for by the issue

of bonds. In reply to this proposition the attorney general claimed that the act did not violate any of the provisions of the constitution, because the building of a state capitol must be considered as part of the ordinary current expenses of the government, and the act dealt only with funds in the state treasury belonging to the general revenues. From the argument of counsel and from the carefully guarded language of the court in that decision, it is clear that the court did not consider and did not hold that under the constitution the legislature had authority to compel the levy of a tax during future years.

I concede that the power of the legislature is not limited by the constitution in the amount of money it may authorize for the running of the government; but it cannot tie the hands of succeeding legislatures. If the building of a new prison was deemed necessary to the proper administration of the government, the legislature had authority under the constitution to provide the whole or any part of the necessary funds in the annual statement of taxes until the next legislature convened; and, if the members of that body were of opinion that the whole amount required was too great a burden to be immediately borne by the taxable property, they were at liberty to build so far as they deemed wise. The unmistakable meaning of the constitution is that the state must pay as it goes, and when the call for money is so heavy or extraordinary as to make it inadvisable to raise the entire amount by an immediate levy then the taxable property of the future can be burdened in one way only, and that by the issue of bonds not to exceed $250,000. By placing its seal of approval upon chapter 27, p. 29, Laws 1909, the state auditor is directed to collect from the taxable property of the state the sum of $225,000 annually for the period of nine years, and he must perform his duty. The debt has already been incurred and the taxpayers may now look forward with positive assurance that the debt must be paid.

Further, the present case differs from Fleckten v. Lamberton in this: The act of 1893 did not provide for the issuance and sale of certificates of indebtedness, and the effect of such an issue and the sale thereof were not considered; whereas, in this case, that additional question is directly involved. A majority of the court hold that the certificates do not create obligations of the state independent of

109 M.—2

the fund provided by the act, and that the holder thereof merely has the right to receive his money upon maturity out of the special funds when collected and received by the state treasurer. I am unable to perceive the distinction. To my mind, the certificates constitute obligations of the state, whether general obligations or limited to the special fund. In either event, the debt must be paid by the taxable property of the state.

Again, assuming that the legislature may direct the future levy of a tax to raise a special fund, to be available at the time the money is collected, the majority hold that the legislature may provide for the present capitalization of such future conditions by issuing certificates of indebtedness to draw interest to be sold to the public upon the assurance that the credit of the state is behind them, and that the money will be forthcoming when the certificates mature. By this arrangement the entire amount of the tax levy is anticipated, and the amount is available for present purposes. Thus the evidence of a present indebtedness is furnished which may be received with confidence in the commercial world.

The constitution places the limit at $250,000, above which no debt shall be incurred for future taxpayers to meet. The amount may be too small for a great and growing state; but the people so provided, and there is a proper way to change it. In my opinion, chapter 27, p. 29, Laws 1909, opens wide the door and renders the constitution meaningless.