## FIRST NATIONAL BANK OF BUHL AND OTHERS v. VILLAGE OF BUHL.[1]

January 20, 1922.

No. 22,619.

**Payment of village warrants.**

1. The governmental powers and duties of municipal corporations, as defined by the statute under which they were created, may be altered by a subsequent general law clearly intended to prescribe the only rule which should govern in the case provided for. Section 1300, G. S. 1913, prescribes the rule determining the order of payment of village warrants and applies to villages organized under chapter 145, Laws 1885.

**Order of payment of village warrants.**

2. Village warrants issued prior to the enactment of chapter 417, Laws 1921, and presented but not paid for want of funds, should be paid in the order of their presentation and take precedence over warrants subsequently issued.

[1]Reported in 186 N. W. 306.

Warrant holders may enjoin village officers from impairing obligation of contract.

3. The holders of past due village warrants may enjoin a village and its officers from putting into effect a resolution of the village council directing the treasurer to devote all funds received after chapter 417 was enacted to the payment of the current expenses of the village for 1921. Such resolution amounted to an attempt to impair the obligation of a contract between the village and the holders of such past due warrants.

Action in the district court for St. Louis county to enjoin defendants from carrying out a certain conspiracy and applying moneys of the village toward the payment of current claims. The return upon an order to show cause was heard by Dancer, J., who granted an injunction pendente lite. From the order granting the injunction, defendants appealed. Affirmed.

*A. R. Folsom, Joseph E. Austin* and *Warner E. Whipple*, for appellants.

*John N. Gannon* and *Thomas H. Strizich*, for respondents.

LEES, C.

In 1920 the village of Buhl levied a tax of $350,000 for general municipal purposes. On April 21, 1921, chapter 417 of the Laws of 1921 took effect. By section 1, cities and villages were limited to $100 per capita of population in levying taxes for municipal purposes in the year 1921 and in each year thereafter. The population of the village is 2,007. On June 6 the village council adopted the following resolution:

"Resolved that the village treasurer be instructed to call and pay all village warrants in all departments issued for debts incurred since April 21, 1921, and that all funds coming into the hands of the treasurer for current year be held in separate funds for the purpose of meeting the current expenses of the village in the several departments."

On April 21 the village had an indebtedness of about $600,000 in excess of moneys in the hands of the treasurer. Such indebtedness was evidenced by village warrants which had been presented to the treasurer for payment, but not paid for want of funds and in-

dorsed accordingly as directed by section 1300, G. S. 1913. Plaintiffs had purchased and held such warrants, amounting approximately to $240,000. Upon the adoption of the resolution, they brought this action to enjoin the village and its officers from putting it into effect. A temporary injunction was granted and defendants have appealed.

Section 1300, G. S. 1913, provides that village orders drawn on the treasurer and presented to him, but not paid for want of funds, shall be so marked, shall be paid in the order of their presentation, and shall bear interest at the rate of 6 per cent from the date of such presentation. If these provisions are applicable, the warrants held by plaintiffs should be paid before those issued after April 21. Counsel for appellants assert that section 1300 has no application because the village was organized under chapter 145, p. 148, Laws of 1885, has never become subject to subsequent legislation relating to villages, and is therefore governed exclusively by chapter 145, which contains no such provisions as are found in section 1300. Counsel for respondents answer, first, that chapter 145 is a general law subject to amendments general in their nature, such as are now embodied in section 1300, and, second, that even in the absence of statutory directions municipal warrants must be paid either in the order of their issuance or presentation.

1. Section 19 of chapter 145 directed how claims against villages should be presented and paid. A clause in chapter 33, p. 27, Laws of 1899, by which chapter 145 was amended, forbade village treasurers from paying out any moneys except on written order of the village president and recorder. A further amendment, chapter 190, p. 285, Laws of 1903, required village treasurers to register orders presented but not paid, to indorse upon them "not paid for want of funds," and to pay them in the order of registration. In substance this provision was retained in section 738 of the revision of 1905, now appearing as section 1300, G. S. 1913. This legislative history indicates an intent to amend chapter 145 by supplying the original omission of specific provisions for the order in which village warrants should be paid.

It is well settled that the governmental powers and duties of municipal corporations, as defined by the statute under which they were created, may be altered by a subsequent general law. If such a law was clearly intended to prescribe the only rule which should govern in the case provided for, it supersedes and repeals by implication the original statute. Nicol v. City of St. Paul, 80 Minn. 415, 83 N. W. 375; Kelly v. City of Faribault, 83 Minn. 9, 85 N. W. 720; School District No. 1 v. Eckert, 84 Minn. 417, 87 N. W. 1019; State v. Swanson, 85 Minn. 112, 88 N. W. 416; Johnson v. City of Duluth, 133 Minn. 405, 158 N. W. 616. We hold that the provisions of section 1300 extend to villages organized under chapter 145. So holding, it becomes unnecessary to consider the rule to be applied in the absence of a statute.

2. Appellants' counsel insist that section 3, chapter 417, p. 646, Laws 1921, has done away with the requirements of section 1300. Section 3 provides that a village which has incurred a valid indebtedness "in excess of its cash on hand, plus any amount in any sinking fund, plus taxes levied prior to 1921 and uncollected but not delinquent," may levy, for the purpose of meeting such indebtedness, in addition to $100 per capita, but within the limits permitted when chapter 417 was enacted, sufficient sums to pay such indebtedness and interest. Such additional sums must be separately levied, kept in a special fund when collected, and used only to discharge such indebtedness.

The contention is that the indebtedness of the village incurred prior to April 21, 1921, is to be paid out of the proceeds of the special tax levy or levies authorized by section 3 and that taxes levied in 1920 should be used so far as necessary to pay current expenses for 1921. It is urged that the legislature intended to put the business of villages on a cash basis after April 21, and to put a stop to the former practice of issuing warrants when there were no funds from which they could be paid, tacitly agreeing with the payees that the warrants should be discounted at some bank. On this phase of the case, the arguments have taken a wide range. We shall not attempt to cover all the ground traversed.

A forceful argument is made in favor of the policy of requiring municipal officers "to pay as they go." The evils of a contrary policy are graphically depicted. Those who perform services or sell commodities to a municipality, knowing that in exchange they will receive a warrant which cannot be paid when presented, usually add more than enough to their charges to cover the discount to which the warrant is subject when sold to a bank, and so too much is paid for anything the municipality must buy. Moreover, warrants presented but not paid draw interest, and there is an additional drain upon the public treasury and a gradual increase in the load of debt which the taxpayers have to carry. The undesirability of this method of doing business is evident, but with that we have nothing to do. Whether the legislature has changed or attempted to change the rule prescribed by section 1300 is the only question with which we are concerned. If it has not, the 1921 revenues of the village may be entirely consumed in paying outstanding warrants regardless of the consequent necessity of following for a time the unsound plan of finance heretofore adopted.

We have examined the numerous cases cited by appellants holding that the current revenues of a municipality should be devoted to the payment of current expenses. Most of them deal with the right to priority of warrants issued to pay such expenses over judgments and other like demands. It is generally held that payment of such demands out of current revenues will be postponed until current expenses have been paid therefrom. Some of the cases discuss the right of general creditors to question the character or necessity of expenditures, which, if made, will cause payment of their claims to be deferred. So far as we have discovered, it has never been held that under a statute such as ours a village may arbitrarily postpone the payment of outstanding warrants and give priority to later warrants. Stress is laid on the alleged irreparable injury to the citizens of Buhl if its officers are not allowed to devote the proceeds of the 1920 tax levy to the maintenance of the fire, police, water and light departments, and the "comparative hardship" rule is invoked in support of the plea for a reversal. Granting that there may be hardship, it was nevertheless a matter lying very largely

within the discretion of the trial court to deny an injunction on that ground. Minneapolis Gas Light Co. v. City of Minneapolis, 123 Minn. 231, 143 N. W. 728. And, finally, we are urged to refuse to sanction judicial interference with the recognized discretion of village officers in appropriating and expending public moneys. None of the considerations suggested have escaped our attention, but none of them go to the heart of the case.

We discover nothing in section 3 evincing a design to exempt the proceeds of the tax levy of 1920 from the payment of outstanding village warrants. The section provides that the cash in the village treasury and the amount of the taxes levied prior to 1921 are to be added and the sum total substracted from the existing indebtedness, and only the remainder may be raised by the special levy which is authorized. This negatives the claim that it was not the intention that the proceeds of the 1920 levy should be used to pay village warrants as directed by section 1300.

Viewed from a practical standpoint, the situation of the village is no different than it would have been if the 1921 statute had not been enacted. In the absence of the statute it would be bound to devote the proceeds of the tax levy to the payment of outstanding warrants, and this would necessitate the issuance and sale of warrants to meet current expenses. The desire to reform bad financial methods cannot be translated into action all of a sudden. So long as section 1300 remains in force, the old way of doing business cannot be wholly abandoned until after the village's load of debt has been removed.

The banks are creditors of the village. When it issued the warrants they hold, it did not specify when or how they should be paid, but the statute did, and of course it is beyond the power of the village council to override the statute. It is within the power of the legislature to prescribe the order of payment of municipal warrants, and a statutory provision in force when they are issued creates a contract for precedence with the warrant holders which cannot be impaired by subsequent legislation. E. H. Rollins & Sons v. Board of Commrs. 199 Fed. 71, 117 C. C. A. 583; Phillips v. Reed, 109 Iowa, 188, 80 N. W. 347; People v. Austin, 11 Colo. 134, 17 Pac. 485;

Eidemiller v. Tacoma, 14 Wash. 376, 44 Pac. 877; Dillon, Mun. Corp. § 859; McQuillan, Mun. Corp. § 2254. Assuredly appellants may not complain because the court interfered with and set bounds to a program of self-government which conflicted with the Constitution and disregarded the mandate of the statute.

Order affirmed.