# BEN MOSES v. FLOYD B. OLSON AND OTHERS.[1]

June 22, 1934.

No. 30,115.

[1]Reported in 255 N. W. 617.

*Harry H. Peterson,* Attorney General, and *Matthias N. Orfield,* Assistant Attorney General, for appellants Floyd B. Olson, Governor, Harry H. Peterson, Attorney General, Julius A. Schmahl, Treasurer, Stafford King, Auditor, and Mike Holm, Secretary of State, together constituting the state executive council; and Blanche L. La Du, Carl Carlgren, and L. G. Foley, together constituting the state board of control acting as the state welfare body.

*Kellogg, Morgan, Chase, Carter & Headley,* for appellant First National Bank of St. Paul.

*Frank E. McAllister,* for respondent.

*LORING, Justice.*

In an action by a taxpayer to restrain the state executive council from selling certificates under L. 1933-1934, Ex. Sess. c. 67, demurrers were overruled and the question as to whether the compaint stated facts sufficient to constitute a cause of action was certified by the trial court as important and doubtful. The case comes here on appeal from the order overruling the demurrers.

It is alleged in the complaint that the executive council has entered into a contract with the defendant bank to sell to it $200,000 par value of the Minnesota Public Relief Certificates, which under the terms of c. 67 are payable with interest out of the state taxes on intoxicating liquor and beer. Prior to the making of the contract the executive council had adopted a resolution determining the necessity for the issuance of the certificates in the sum of $200,000, $50,000 of the proceeds of which were to be used for the general purposes of the act, $50,000 for drought relief, $50,000 for veterans' relief to needy and destitute veterans, and $50,000 for direct relief to needy and destitute persons. The plaintiff seeks to

restrain the issuance of these certificates and all others which the act assumes to authorize.

The constitutionality of c. 67 is challenged on a variety of grounds. The respondent asserts that the title of the act includes a multiplicity of subjects; that the purposes to which the proceeds of the certificates are to be devoted are private and not public; that the act authorizes the state to carry on works of internal improvement; that it authorizes the creation of a public debt in contravention of art. 9, §§ 5-6, of the state constitution and that it involves extraordinary expenditures in excess of $250,000 as prohibited by § 5 of that article; that it extends state credit to individuals; and that, while the act provides for the issuance of $5,000,000 in certificates in the aggregate, it provides that those certificates plus the interest thereon must not exceed $5,000,000.

Chapter 67, after reciting the emergency with which we are confronted, appropriates to the state executive council all money which shall come into the state treasury from state taxes on intoxicating liquor and beer within two years after the going into effect of a law, then just enacted, taxing intoxicating liquor and beer, not exceeding, however, $2,500,000, for necessary direct relief, drought relief, veteran relief, and work and reëmployment to needy, destitute and disabled persons, and an additional $2,500,000 to meet the requirements of the United States as a condition to the extending by the government of direct relief, work relief, and reëmployment within the state.

The act provides that the state board of control acting as the state welfare body shall administer the direct relief and the work relief therein provided for in accordance with the provisions of L. 1933, c. 89, and that the state executive council may appropriate to the board such sums as may be necessary to provide necessary direct relief, work relief, and employment to needy, destitute, and disabled persons within the state of Minnesota. In extending work relief the act authorizes the council to undertake projects involving flood control, water supply, water diversion, control of erosion, reforestation and afforestation, and any other projects which will aid in the conservation and development of the natural resources of

the state and in the promotion or conservation of the public health, public safety, and general welfare of the people of the state. The council is also authorized to enter into any appropriate agreement with the United States government necessary to carry out the purposes of the act. $750,000 of the appropriation for direct relief is allocated to the relief of veterans of all wars and their families resident in Minnesota. Certificates of indebtedness to be known as Minnesota Public Relief Certificates are authorized to be issued pending the collection of the taxes appropriated to the purposes of the act. (The act also provides that its various provisions shall be severable and that if any provisions be held invalid the remaining portions shall remain in full force and effect.) The authority given the council and board terminates July 1, 1935.

L. 1933, c. 89, designates the state board of control as the state welfare body responsible for administering such support or relief of the poor and such direct relief or work relief in aid to destitute families or poor persons as may be carried on in behalf of the state. That act defines "poor persons" as those for whose support or relief a legal liability is imposed under 1 Mason Minn. St. 1927, c. 15, and defines "work relief" as support or relief in wages or other compensation paid for in cash or in kind, and the words "direct relief" as relief to poor persons in the form of food, clothing, shelter, medical care and supplies, and other necessities of life. 1 Mason Minn. St. 1927, c. 15, § 3157, describes a "poor person" as one who for any reason is unable to earn a livelihood and imposes upon the county, town, city, or village in which he has a settlement a liability for his support or relief in case he has no relatives within designated degrees who have sufficient ability to support him. L. 1933, c. 89, remains in force only until June 30, 1935.

■ (a) We find no serious difficulty with the title to c. 67. It is prolix, but all its provisions relate to the single object of appropriating the proceeds of certain taxes for relief under the direction of the state executive council and the administration of the state board of control.

(b) The first serious challenge to the constitutionality of the act is that it appropriates public money for private purposes. Section 2 of the act provides in part as follows:

"The council is authorized to extend direct relief, veteran relief, work relief, and employment to.the people of the state in such manner and to such an extent as to it may seem necessary and proper, *subject to the limitations herein provided."*

Section 2 then continues by describing the purposes to which work relief may be devoted.

Section 3 provides the limitation referred to in the first sentence of § 2. It reads in part as follows:

"The council, within the limits of the appropriation provided herein, is authorized to appropriate to the board, from time to time as needed, such sums of money as may be necessary, to provide *necessary* direct relief, work relief and employment to *needy, destitute, and disabled persons* within the state of Minnesota. * * * *and no money not so appropriated shall be expended under the authority of this act."* (Italics ours.)

As we view the provisions of the act, the limitation in the first sentence of § 3 applies to all expenditures under the act, and no money is authorized to be expended except for the relief of the needy, destitute, and disabled. In the Century Dictionary the word "needy" as applied to persons is defined as meaning "indigent" or "very poor." In the Concise Oxford Dictionary, adapted from the Oxford Dictionary, it is defined as being in a state of "destitution," in "lack of necessaries, poverty." The Century defines "destitute" as applied to persons as meaning "without means; indigent; needy; poor." "Disabled" is defined as "wanting ability; incompetent." While we think of it here as meaning physically disabled, when used in connection with the words "needy" and "destitute," we have no question that the legislature intended it to mean not only physically disabled, but needy and destitute on that account. When a statute is challenged for unconstitutionality, it is the duty of the court to construe it so as to render it constitutional if it is possible to do so, though of course it may not virtually rewrite an unambiguous law. Gamble-Robinson Co. v. Pennsylvania R. Co. 157 Minn. 306, 196 N. W. 266. Chapter 67 provides that the state board of control shall administer the direct relief and the work relief in

accordance with the provisions of L. 1933, c. 89. By c. 89 that board is made responsible for administering such state relief to "destitute families" and "poor persons." It has no authority to relieve others. "Poor persons" are defined as meaning those described in 1 Mason Minn. St. 1927, c. 15.

We therefore hold that the words "needy, destitute, and disabled persons" as used in c. 67 mean substantially the same as "poor persons" as defined in 1 Mason Minn. St. 1927, c. 15; namely, persons without means who for any reason are unable to earn a livelihood. That reason may be temporary inability to obtain employment of any kind. As we view c. 67, no appropriation of public money is authorized except for such relief. The restrictions of § 3 apply to drought relief and veteran relief. Such relief must be to the "needy, destitute, and disabled" as we herein interpret those terms. We regard such an object as unquestionably public in its purpose. Nor is such purpose vitiated by the fact that in part it may be administered by providing employment for those needy and destitute persons who may be able to work. The state may very properly and commendably require work as a condition of relief. Relief does not thereby lose its character as such. Hanson v. St. James Hotel & U. C. Mission, 191 Minn. 315, 254 N. W. 4.

(c) Nor does the provision of the act indicating the purposes to which the employment may be directed violate the constitutional provision against carrying on works of internal improvement so long as those works remain incidental only to the main public purpose of relief to the poor. State ex rel. Smith v. Van Reed, 125 Minn. 194, 145 N. W. 967; Rippe v. Becker, 56 Minn. 100, 117, 57 N. W. 331, 333, 22 L. R. A. 857. The courts will be jealous to prevent any perversion of the purpose of c. 67 by attempts to carry on such works of internal improvement under the guise of work relief. The main and principal purpose must at all times be a *bona fide* provision of necessary relief to the poor and destitute. There is a presumption that public officers will so conform to the constitution. State v. Miller, 146 Iowa, 521, 124 N. W. 167; Grossfield v. Baughman, 148 Md. 330, 129 A. 370, 373; State ex rel. Ginocchio v. Shaughnessy, 47 Nev. 129, 217 P. 581.

The part of the appropriation allocated to projects financed in part by the United States to meet its requirements as to conditions under which it undertakes such projects is for the purpose of coöperating with the government in "direct relief, work relief and reëmployment within the state." This part of the appropriation is limited by the first sentence of § 3, which authorizes appropriation under the act for relief and employment "to needy, destitute, and disabled" only. No funds may be dispensed for any other purpose under the act, and the board in its coöperation with the United States is required to protect its contributions so that state money shall be used for proper relief purposes as limited by § 3 only. The act forbids the use of the appropriation for any other purpose.

(d) Minn. Const. art. 9, § 5, prohibits the legislature from contracting a public debt to defray extraordinary expenditures in excess in the aggregate of $250,000. Chapter 67 does not authorize a public debt. Brown v. Ringdal, 109 Minn. 6, 12, 122 N. W. 469; Flecken v. Lamberton, 69 Minn. 187, 72 N. W. 65. The certificates authorized by that chapter are issued in anticipation of the receipt of taxes rightfully appropriated and are valid only as payable from such taxes when paid into the state treasury. They are not general obligations of the state. This question is controlled by Brown v. Ringdal, 109 Minn. 6, 122 N. W. 469.

(e) We see no lending of the state's credit by the issuance of the certificates. The state is making use of its own credit to obtain money in advance of its collection of taxes which are properly appropriated to a public purpose. It does not lend its credit to others nor use it for a forbidden purpose. See State ex rel. Hahn v. Young, 29 Minn. 474, 9 N. W. 737. People v. Westchester County Nat. Bank, 231 N. Y. 465, 132 N. E. 241, 15 A. L. R. 1344, is readily distinguishable. The majority opinion in that case carefully distinguishes the bonus law there before it from provisions made, as here, to meet the state's obligation to the destitute and disabled. Moreover, the dissenting opinions of Judges Cardozo and Pound appeal to us as containing the sounder reasoning.

▆ Taking all of the provisions of the act together, we think it is fairly clear that the legislature intended that the appropriation

of taxes should cover certificates to the aggregate face value of $5,000,000 plus the interest which may accrue thereon.

Order reversed.

