## ARTHUR NAFTALIN v. STAFFORD KING.

90 N. W. (2d) 185.

May 9, 1958—No. 37,494.

*Hugh H. Barber,* for appellant.

*Miles Lord,* Attorney General, and *John R. Murphy,* Assistant Attorney General, for respondent.

MATSON, JUSTICE.

Appeal by defendant from a judgment entered pursuant to plaintiff's motion for judgment on the pleadings.

We are concerned with three basic questions: First, whether the issuance by the state, pursuant to statute, of certain tax anticipation building certificates to defray the cost of constructing and rehabilitating a variety of state buildings will create a state debt within the debt limitations of Minn. Const. art. 9, §§ 5, 6, and 7, and, second, whether such certificates, if issued, will be valid and binding obligations not subject to impairment by future legislative acts repealing or diminishing the tax sources for their payment. The final issue is whether the construction and rehabilitation program to be financed by said certificates involves works of internal improvement in contravention of Minn. Const. art. 9, § 5.

Plaintiff, as commissioner of administration of the State of Minnesota, brought this action against the defendant, the state auditor of Minnesota, to compel the latter to issue and sell the certificates of indebtedness which are authorized by L. 1955, c. 855 (as amended by L. 1957, c. 729), and Ex. Sess. L. 1957, c. 2. The 1955 act, as amended, levies (for the years 1955 to 1974, inclusive) upon all taxable property in the state a tax to produce $28,803,432.35 and appropriates the proceeds thereof to the state building fund for the payment of tax anticipation certificates to be issued thereon. The act passed in the 1957 extra session levies (for the years 1957 to 1976, inclusive) a tax of $55,121,939 in the same manner and for the same purposes. Defendant, as state auditor,—challenging the constitutionality of the acts—refuses to issue and sell the certificates, despite the certification to him by plaintiff, commissioner of administration, that the funds appropriated under both acts are presently needed to carry out the project specified therein.

The facts as established by the pleadings are undisputed. Plaintiff's complaint and defendant's answer both prayed for a judgment declaratory of the duty of the defendant and determining the validity and

constitutionality of the issuance and sale of the certificates authorized by the foregoing acts. Defendant, in his answer, admitted all allegations of the complaint. Plaintiff moved for judgment on the pleadings and in the alternative for summary judgment. Since no material issue of fact existed, the trial court granted judgment on the pleadings. The trial court's judgment decreed it to be the duty of the defendant to issue and sell the building certificates as authorized and adjudged such certificates to be valid and binding special obligations of the state which cannot be repealed or impaired until paid, further adjudging that the works authorized by the statutes do not constitute works of internal improvements.

In passing on the issues raised by this appeal, it becomes necessary to state with more particularity the scope and purpose of the pertinent statutory provisions.

The Minnesota legislature originally created the Minnesota state building fund by enacting L. 1935, c. 383. The act provided for the levy of a tax for a 10-year period upon all taxable property in the state, for the crediting of the proceeds of the tax to such fund, and for the appropriation of the same for the construction of a new state hospital and for the building or improvement of various other state buildings. The state auditor was directed to issue and to sell building certificates payable out of the fund. Proceeds from the sale of the certificates were to be credited to the fund, and the certificates were in turn to be made payable from the fund out of the moneys derived from the tax levy. Interest due on the certificates was payable out of the revenue fund until taxes were collected to meet the interest payments.

The 1955 and 1957 acts here involved appropriate money from the state building fund for the construction, remodeling, and repair of a variety of public buildings. The acts, after designating the purpose and amount appropriated for each item, provide a detailed plan for replenishing the building fund to meet the financing of these projects. Under each act the financing is accomplished by imposing a tax levy over a period of 20 years[1] in an amount sufficient to equal the amount

---

[1] Under L. 1955, c. 855, as amended by L. 1957, c. 729, the tax levies

of expenditures plus interest on the certificates of indebtedness authorized by the act. Proceeds of the tax levies are to be paid into the state building fund. Each act specifically provides that certificates of indebtedness may be issued as funds are needed, subject to the limitation that the certificates cannot exceed the authorized aggregate appropriation. The certificates are to be a charge and a lien upon the tax levy authorized in each act, with principal and interest payable only from such taxes. An exception exists in that payment of interest may be made from the general revenue fund subject to reimbursement. This exception is quoted below:

"* * * provided that such interest as may become due at any time when there is not on hand a sufficient amount from the proceeds of such taxes to pay the same, shall be paid out of the general revenue fund in the state treasury, and the amount necessary therefor is hereby appropriated *to be reimbursed from the proceeds of such taxes when received.*" (Italics supplied.) L. 1955, c. 855, § 14, subd. 2 (as amended), and Ex. Sess. L. 1957, c. 2, § 14, subd. 2.

In subd. 1 of § 14 in both of the above acts, there is a clear provision for tax levies to meet repayments which shall be necessary under the provisions. After providing for tax levies in a fixed amount, the subdivision provides that the state auditor shall levy:

"* * * additional amounts sufficient to produce such sums as may be necessary to pay the interest upon certificates of indebtedness * * *. In case of a deficiency in the proceeds of such tax levy for any year, the auditor shall levy sufficient additional amounts in succeeding years to compensate therefor until the full amount herein authorized has been raised."

Thus, it is apparent that the scheme of the acts contemplates the payment of principal and interest on the certificates *exclusively from the tax levies provided by the acts.* Any deficiency in the fund must be compensated for in the succeeding year by an increase in the tax levy. General revenue funds may be used only to meet interest pay-

---

are for the years 1955 to 1974, inclusive; Ex. Sess. L. 1957, c. 2, spreads the tax levies over the years 1957 to 1976, inclusive.

ments on certificates, not principal, and the general revenue fund must clearly be reimbursed during the succeeding year. The acts provide that the state auditor shall levy and collect the tax and issue and sell the certificates of indebtedness.

■ Defendant's contention that the 1955 and 1957 acts[2] violate Minn. Const. art. 9, §§ 5, 6, and 7, and are consequently void, raises a basic issue that was first presented to this court nearly half a century ago in Brown v. Ringdal, 109 Minn. 6, 122 N. W. 469.[3] That decision held that tax anticipation certificates of indebtedness issued to defray the cost of building a new state prison, and payable exclusively from moneys in a special prison building fund derived from a tax levied and collected over a 10-year period on all taxable property in the state (in the same manner as other taxes), did not create a general obligation of the state so as to constitute an indebtedness within the meaning of that part of Minn. Const. art. 9, § 5, which provides:

"For the purpose of defraying extraordinary expenditures, the state may contract public debts, but such debts shall never, in the aggregate, exceed two hundred and fifty thousand dollars; * * *."

Although defendant concedes that the Brown decision is adverse to his contention, he urges that it is so obviously contrary to the plain intent of the constitution that it should no longer be followed. He asks that it be overruled on the theory—among others—that it was based upon an erroneous interpretation of the prior holding of this court in Fleckten v. Lamberton, 69 Minn. 187, 72 N. W. 65. The Fleckten case,[4] *which involved no tax anticipation certificates of indebtedness,* held that a legislative act which, to defray the cost of building a new state capitol, appropriated for a 10-year period the surplus revenues in the state treasury did not thereby create a state debt within the meaning of the state constitution.

Despite defendant's able and persuasive argument—which might well prevail if the present court were passing on the issue for the first time— we find no justification for now overruling the longstanding special-

---

[2]L. 1955, c. 855, as amended by L. 1957, c. 729; Ex. Sess. L. 1957, c. 2.
[3]The Brown decision was filed July 23, 1909.
[4]Filed in 1897 or 61 years ago.

fund rule of the Brown decision which holds in effect that a state indebtedness is not created within the meaning of the constitution when certificates of indebtedness are authorized and issued pursuant to a legislative act which makes them exclusively payable from a special fund, the proceeds of which are derived from the levy and collection of a tax authorized for that particular purpose. The special-fund rule, with certain variations, was later applied by this court in Moses v. Olson, 192 Minn. 173, 255 N. W. 617, and Erickson v. King, 218 Minn. 98, 15 N. W. (2d) 201. Recently in Visina v. Freeman, 252 Minn. 177, 89 N. W. (2d) 635, we recognized that the foregoing decisions were controlling and held, *as well established*, that this type of financing does not contravene the constitutional limitation upon the contraction of state debt.[5] No purpose will be served by repeating the reasons for the special-fund rule since they have been set forth in our prior decision as well as elsewhere. See, 49 Am. Jur., States, Territories, and Dependencies, § 69.

Since the issuance of the tax anticipation certificates will not create a state debt within the meaning of Minn. Const. art. 9, §§ 5, 6, and 7, it follows that certain other state debt regulatory provisions found in these sections—such as that requiring the tax levy to be sufficient to pay the entire indebtedness within 10 years—are inapplicable and no issue arises as to them.[6]

---

[5] See, 17 Dunnell, Dig. (3 ed.) § 8847.

[6] Although, largely because of our prior decisions of long standing, we definitely hold that the building certificates of indebtedness authorized by the 1955 and 1957 acts do not contravene Minn. Const. art. 9, §§ 5, 6, and 7, it is the opinion of all members of the court that a word of caution as to future state financing is in order. As forcefully pointed out in Brunk v. City of Des Moines, 228 Iowa 287, 291 N. W. 395, 134 A. L. R. 1391, the special-fund type of financing may be so abused that it becomes merely a subterfuge for evading the purpose of constitutional state debt limitations. A constitutional provision which has become so outmoded that only an ever-increasing application of legal ingenuity makes it workable in meeting the modern needs of state finance should be amended. The abuse of the special-fund doctrine has become apparent to many authorities. See, Annotations, 92 A. L. R. 1299 and 134 A. L. R. 1399; 23 Minn. L. Rev. 391; Ratchford, American State Debts, pp. 446 to 466.

Will these tax anticipation certificates be valid and binding obligations of the state, irrevocably payable from tax levies and sources which cannot, by subsequent legislatures, be repealed, postponed, diminished, or otherwise impaired? It is urged that the certificates, which do not constitute a general obligation of the state payable from its general revenue fund, have no binding validity since they are payable solely out of a specially designated fund which is dependent for its replenishment upon the continuance over a period of years of a designated tax source which may be repealed. In the leading case of State ex rel. Hahn v. Young, 29 Minn. 474, 538, 9 N. W. 737, 746, in holding that a state may irrevocably bind its taxing power to provide funds to meet a financial obligation so as not to be subject to impairment by a subsequent *constitutional amendment,* we said:

"* * * Of course a state can bind itself to pay money, and it must follow that it can bind itself to provide the funds by the means necessary for that purpose. It may irrevocably bind its taxing power. *We are speaking now of the state, not of the legislature. The power of that department to bind the state in the matter of taxation will necessarily depend on the authority conferred on it by the constitution.* Its authority in that regard need not be considered here; for, if the taxing power was bound at all in respect to these bonds, it was done by the state in the constitution. A state may, by contract, irrevocably bind itself not to exercise, or may irrevocably limit the exercise of, its power of taxation." (Italics supplied.)[7]

Although the legislature may not surrender, suspend, or contract away the state's power of taxation (Minn. Const. art. 9, § 1), there is nothing in the constitution which prohibits the legislature from irrevocably binding its taxing power to provide the funds necessary to fulfill the state's contractual obligations to pay money.

"The state is only a corporate name for all the citizens within certain

---

[7]In Brown v. Ringdal, 109 Minn. 6, 122 N. W. 469, the question as to the legislature's authority to irrevocably bind the state's taxing powers over a period of years, so as to be beyond change by subsequent legislatures, was raised but left undetermined.

territorial limits. The whole people acting as a public corporation have a right to enter into contracts and make purchases. In doing so, however, they must act through some agency. They may choose to act through any agency created by law, *including the legislature,* which is the highest representative authority through which the people can act." (Italics supplied.) 49 Am. Jur., States, Territories, and Dependencies, § 63.[8]

Where a contract is entered into in behalf of the state through an act of its legislature, its terms are to be found in the provisions of the act by which it was created. Once the state, pursuant to a legislative act, has exercised its power and entered upon a contract, as it does when it issues either bonds or certificates of indebtedness under a statute providing for tax levies to be paid into a special fund for their repayment, the state, under the contract clauses of the state and the Federal constitutions, cannot impair that contract but is bound to carry out its terms without repealing, postponing, diminishing, or otherwise impairing the tax levies so established for its fulfillment.[9] Such a contract is, however, subject to the implied condition that it is ever subordinate to a proper and reasonable exercise of the state's police power. It is generally recognized that statutory provisions existing at the time of the issuance by the state of bonds or other undertakings to pay money, which control or regulate their manner and source of payment, constitute—in the absence of a stipulation to the contrary—a part of the

---

[8]See, In re Gemmill, 20 Idaho 732, 119 P. 298, 41 L.R.A. (N.S.) 711, Ann. Cas. 1913A, 76.

[9]This is clearly the case under the Federal constitution: McCullough v. Virginia, 172 U. S. 102, 19 S. Ct. 134, 43 L. ed. 382; McGahey v. Virginia, 135 U. S. 662, 10 S. Ct. 972, 34 L. ed. 304; Von Hoffman v. City of Quincy, 71 U. S. (4 Wall.) 535, 18 L. ed. 403; City of Galena v. Amy, 72 U. S. (5 Wall.) 705, 18 L. ed. 560; Evangeline Parish School Board v. Kansas City Life Ins. Co. (5 Cir.) 153 F. (2d) 611; Village of Kent v. United States ex rel. Dana (6 Cir.) 113 F. 232; In re Copenhaver (C. C. W. D. Mo.) 54 F. 660; 12 Am. Jur., Constitutional Law, § 399; 16 C. J. S., Constitutional Law, § 289; Annotation, 85 A. L. R. 244. See, 5 McQuillin, Municipal Corporations (3 ed.) § 19.41.

Minnesota cases are indicative of the same rule. See, State ex rel. Hahn v. Young, 29 Minn. 474, 9 N. W. 737; First Nat. Bank v. Village of Buhl, 151 Minn. 206, 186 N. W. 306, 6 Minn. L. Rev. 330.

state's contractual obligation.[10] It follows that any tax anticipation certificates of indebtedness issued pursuant to L. 1955, c. 855, as amended by L. 1957, c. 729, and Ex. Sess. L. 1957, c. 2, will be valid and binding obligations of the state which are not subject to impairment by subsequent legislative action.

■ Do the statutory acts, however, purport to authorize the state to engage in works of internal improvements in contravention of that provision of Minn. Const. art. 9, § 5, which reads:

"* * * The state shall never contract any debts for works of internal improvements, or be a party in carrying on such works, * * *"?

Since, as already noted, the issuance of the certificates will not create a debt within the meaning of the constitution, we are concerned only with the question of whether the building activities and projects to be financed by such certificates involve works of internal improvement. The appropriations authorized by L. 1955, c. 855, as amended by L. 1957, c. 729, provide for the construction, remodeling, altering, and equipping of buildings at the state hospitals, training schools, the prison, reformatories, teachers colleges, and the University of Minnesota. The appropriations under Ex. Sess. L. 1957, c. 2, are similar. Clearly, the entire building and rehabilitation program is primarily, if not exclusively, concerned with works which are to be used exclusively, or at least primarily, by and for the state, as a sovereign, in the performance of its governmental functions. In Rippe v. Becker, 56 Minn. 100, 117, 57 N. W. 331, 335, 22 L. R. A. 857, this court, speaking through Mr. Justice Mitchell, said:

"* * * those [works] which are used exclusively by and for the state, as a sovereign, in the performance of its governmental functions, such as a state capitol, state university, penitentiaries, reformatories, asylums, quarantine buildings, and the like; for education, the prevention of crime, charity, and the preservation of public health are all recognized functions of state government."

The provision in Minn. Const. art. 9, § 5, prohibiting the state from

---

[10]12 Am. Jur., Constitutional Law, §§ 386, 399, and 418; 12 Id., Contracts, § 240.

engaging in works of internal improvement has no application to those activities—inclusive of the construction and rehabilitation of state buildings and grounds—which are carried on or performed by the state in its sovereign capacity and in the discharge of its governmental functions.[11]

Furthermore, works which are reasonably essential to the performance of the state's governmental functions do not lose their governmental status or character because they incidentally embrace some activity which may possibly be operated as a proprietary undertaking for profit, such as a parking lot, and this holds true as long as the primary purpose of such incidental activity is not to obtain revenue but to further the discharge of a governmental function. Erickson v. King, 218 Minn. 98, 15 N. W. (2d) 201. We hold, therefore, that the 1955 and 1957 acts authorize works relating to a governmental function and do not constitute works of internal improvement.

The judgment of the trial court is affirmed.

Affirmed.

---

[11]Visina v. Freeman, 252 Minn. 177, 89 N. W. (2d) 635; Erickson v. King, 218 Minn. 98, 15 N. W. (2d) 201; Lipinski v. Gould, 173 Minn. 559, 218 N. W. 123, 730; State ex rel. Smith v. Van Reed, 125 Minn. 194, 145 N. W. 967; 17 Dunnell, Dig. (3 ed.) § 8830.